# SUPREME COURT.

## THE PEOPLE *ex rel.* MUNSON I. LOCKWOOD agt. WILLIAM W. SCHRUGHAM.

The *relator, Munson I. Lockwood,* was duly elected Brigadier-General by the field-officers of his brigade—then comprising the county of Westchester—in 1841. He held that office, and was in the discharge of its duties, when the act of May 13, 1846, was passed. Under that act a brigade was formed including Westchester county (except one town) and the three counties on Long Island. The latter act provided that the Brigadier-General in commission and highest in rank, residing in such brigade district, should be the commanding officer of such brigade.

Under an act of May 13, 1847, the counties of Long Island were detached from the brigade then under the command of the relator, and a district was formed consisting of the militia of the counties of Westchester, Putnam, and Rockland, constituting the seventh brigade. The command of this brigade was assigned, by the commander-in-chief, in general orders, dated the 9th of June, 1847, to the relator, *Gen. Lockwood.* He continued to act in that capacity until 5th May, 1855, when the governor of the state issued a general order, revoking so much 'of the order of the 9th June, 1847, as assigned the command of the brigade to the relator, and directed and commissioned the defendant, *William W. Schrugham,* to the command of said brigade.

The question is, which of these gentlemen had the better title to the actual command of the seventh brigade?

By the present constitution, the provision for electing brigadier-generals by the field-officers of the brigade is continued. And the 5th section of the 11th article is in the following words: "The commissioned officers of the militia shall be commissioned by the governor; and no commissioned officer shall be removed from office, unless by the senate, on the recommendation of the governor, stating the grounds on which such removal is recommended, or by the decision of a court-martial pursuant to law. *The present officers of the militia shall hold their commissions subject to removal as before provided.*"

By the act of April 17, 1854, (tit. 2, § 5,) it is provided, that *brigadier-generals* shall be chosen by the field-officers of their respective brigades. The 9th section says, that whenever the office of a brigadier-general is vacant, the commander-in-chief shall issue an order for an election to fill the vacancy. The 43d section is as follows: "The commander-in-chief is hereby authorized and empowered to appoint and commission the brigade, regimental and company officers, necessary to facilitate the organization of all military districts *not now sufficiently organized to authorize an election.* All officers superseded by such appointment shall become supernumerary officers."

The People *ex rel.* Lockwood agt. Schrugham.

*Held,* that the provisions in the act of 1854, as to the election or appointment of officers, were not intended to remove *the then existing officers.* The governor, therefore, was not authorized by that act, nor any other statute, to displace the relator, or to appoint the defendant.

It has never been decided that one holding an elective office shall be denuded of it, by the *enlargement of the district* which elected him, and to which his official action was confined. The universal practice has been the other way.

Where an individual is the actual occupant, and claims, under possession and color of right, to hold an office, and a claim to such office, and an interference by another, is interposed, the incumbent should not be required to elect to consider himself out of the possession of the office, and then to resort to a tedious *action* to procure his restoration. A *mandamus* is the proper remedy in such a case. If the incumbent is entitled to the office, he should be *promptly* quieted in the discharge of his duties.

*Westchester Special Term, Oct.,* 1855.

*The Relator in person, and* RALPH LOCKWOOD.
*The Defendant in person, and* JOHN THOMPSON.

S. B. STRONG, Justice. This case is before me upon an *alternative mandamus,* with several affidavits annexed to the writ, an answer, and a demurrer. The demurrer, of course, admits the facts and the direct denials contained in the answer, but not such assertions and denials as are merely inferential. The facts, as they are represented in the pleadings, are as follows :—

The relator was, in 1841, duly elected Brigadier-General of the fifteenth brigade, consisting of the militia of the county of Westchester. He received a commission from the governor shortly after his election, and thereupon entered upon the performance of the duties of the office, which he continued to discharge until the new organization of the militia, pursuant to the act of May 13, 1846.

Under that organization, the division, comprehending Westchester county, was divided into two brigades, one of which consisted of the militia of the county, with the exception of one town, and of the counties of Long Island. The relator, being the brigadier-general in commission and highest in rank, residing in the brigade-district, including the greater part of

Westchester county, thereupon became, according to the provisions of the act of 1846,—(and whether they are valid or not will be considered hereafter,)—the commanding officer of the brigade, and the command of such brigade was formally assigned to him in general orders.

Under the act of May 13, 1847, the counties on Long Island were detached from the brigade then under the command of the relator, and a district was formed consisting of the militia of the counties of Westchester, Putnam, and Rockland, which thereupon constituted, and still continues to constitute, the seventh brigade. The command of that brigade district was assigned by the commander-in-chief, in general orders dated the 9th of June, 1847, to the relator, he being the brigadier-general residing in such district, highest in rank, who was in command on the first day of November, 1846, and who (it is to be inferred, as there is no allegation to the contrary, and the legal presumption is in favor of the action of the highest military authority in our state) had performed military duty according to the requirements of said last-mentioned act. The relator thereupon assumed the command of the seventh brigade as brigadier-general, and continued to act in that capacity until he was interrupted by the defendant.

On the 5th of May, 1855, the governor of the state issued a commission to the defendant as brigadier-general of the seventh brigade, and on the same day issued a general order, revoking so much of the order of June 9, 1847, as assigned the command of the brigade to the relator, and directed the defendant to assume the command of said brigade. The defendant, on receiving his commission, and the general order which accompanied it, took the requisite official oath, and commenced acting as commander of the brigade, and thereby interrupted the official action of the relator.

The alternative mandamus requires the defendant to permit the relator to exercise the office of brigadier-general of the seventh brigade, without any interruption or intrusion from or by the defendant, or to signify the cause why he will not do so. The defendant claims a right to the office under the commission

and general order to him, which he contends were fully warranted by the act of April 17, 1854. He also objects to the relator's right to execute the duties of the actual commandant of the brigade, at the time when the commission and orders of the 5th of June, 1855, were issued.

The counsel for the defendant contended, on the argument, that the solicited remedy by mandamus would be inappropriate under the circumstances stated by the relator, as, if his claim was well founded, he might and should have resorted to the action substituted by the Code for the writ of *quo warranto,* (§ 432, *sub.* 1.) It is undoubtedly true, as was decided in the case of *The People.* agt. *The Corporation of the City of New-York,* (3 *Johns. Ca.* 79,) that where an office is already filled by a person who has been admitted and sworn, and is in by color of right, a mandamus is never issued to admit another person. The proper remedy for the applicant was formerly by a *quo warranto,* and would now be by the substituted action. But an important consideration in the case in question is, which of the two competitors actually fills the disputed office. The relator had been for several years before, and was, at the time when the commission to the defendant was issued, the actual occupant, and claimed then, and still claims, under color of right, to hold the office. He has never at any time relinquished it. If his claim is valid, neither the commission to the defendant nor the accompanying order of the commander-in-chief, nor the subsequent interference by the defendant, would constitute an actual expulsion from the office. The possession would follow the right, as it uniformly does where acts of ownership are simultaneously exercised by contestants, and especially where the actual title is in the prior occupant. This, then, if the plaintiff's claim is well-founded, is not a case of expulsion, but of interference by the defendant with the functions of an office actually held by another. In such a case, the incumbent should not be required to elect to consider himself out of the possession of the office, and then to resort to a tedious action to procure his restoration. Besides, he could not institute the action without the assent and co-operation of the attorney-general,

and that officer might so far doubt the justice of his claim, and especially where it might be based upon the assertion of the assumption of unauthorized power by the executive, of whom he is the official adviser, as to withhold his consent, and then the unlawfully-ejected officer would be without a remedy; or if there should be any, it would be very circuitous. It seems to me, that the interests of the officer, and, in a case like the present, of the public, require a more certain, adequate and speedy remedy. He should be promptly quieted in the discharge of his duties, and the many who are subjected to his command in the performance of their military duty, should be informed without unnecessary delay to whom they owe obedience as their lawful superior officer. I think that if the relator is entitled to any relief it should be by mandamus. That mode of proceeding will not deprive the defendant of any right to which he would be entitled in an action in the nature of a *quo warranto* under the Code. He may, in the one case, rely, as he might have relied in the other, upon his title, and if there had been any question of fact, it might have been submitted to a jury.

The main question in this controversy is, which of these gentlemen has the better title to the actual command of the seventh brigade of our state militia?

The relator was duly elected a brigadier-general by the field-officers of his brigade in 1841. He held the office, and was in the discharge of its duties, when the act of May 13, 1846, was passed. Under that act a brigade was formed, consisting of the militia of his previous command, with a slight exception, with the addition of the militia of the three counties on Long Island. The relator was assigned to the command of the brigade thus constituted, in pursuance of a provision contained in the eighth section of that act, which is in the following words: "The brigadier-general in commission and highest in rank, residing in such brigade district, shall be the commanding officer of such brigade." He held such command when our present state constitution went into effect. By that instrument the provision for electing brigadier-generals by the field-

officers of the brigade, was continued.    The fifth section of the eleven article is in the following words :—

"The commissioned officers of the militia shall be commissioned by the governor; and no commissioned officer shall be removed from office unless by the senate, on the recommendation of the governor, stating the grounds on which such removal is recommended, or by the decision of a court-martial, pursuant to law.    The *present officers of the militia shall hold their commissions subject to removal as before provided.*"

The next (sixth) section provides, that if the mode of election and appointment of militia officers, directed by that constitution, should not be found conducive to the improvement of the militia, the legislature might provide a new mode, "if two-thirds of the members present in each house should concur therein."    That the relator held the office of brigadier-general when that constitution came in force, and could be removed only pursuant to its provisions, there can be no doubt.    He had not then be degraded from the office.    The *bounds of the brig-*ade commanded by him had been greatly extended, and therefore, it is true, that it then comprehended many whose field-officers had no voice in his election.    But I am not aware that it has ever been decided that one holding an elective office shall be denuded of it by the enlargement of the district which elected him, and to which his official action was confined.    The universal practice has been the other way.    Additions have been made from time to time to the territories of the United States, of some of the *states,* of counties, and of towns, and in all cases the jurisdiction of the federal, state, county and town authorities, has been extended in the newly-acquired territory, although its inhabitants had no voice in their election.    The constitutional provision prescribes the mode of their election, but not the limits of the territory over which their authority might extend.    If the alteration of the militia districts, effected by the act of 1846, had ejected the officers in such districts, none of the field-officers, and but few of the company-officers, would have continued in command.    That act did not contemplate so great and extensive a change, nor was it, in fact, made.    The constitutional

requisition was satisfied by the mode of their election. There was no express confinement of their action or power to the limits of their original districts, nor was there any reason why they should be thus limited by implication.

Had the act of 1846 provided that the various militia officers might be transferred to districts wholly new, that might have been deemed an evasion of the constitution, and so far void; but that act carefully provides that the retained officer shall be the highest in rank in the consolidated district of which his own former district in which he resided, should constitute a part. I am satisfied that the alterations made by the act of 1846 did not require new elections of militia officers, and that therefore the relator was in the lawful command of the brigade to which he had been assigned when the constitution, adopted in the same year, went into operation.

The act of May 13, 1847, called for a change in the relator's district, by expressly separating the Long Island counties, and by requiring, in effect, the association of other territory. But that act contained the provision that the brigadier-general residing in the district highest in rank, (with certain requisites, which it is unnecessary to specify, as the relator confessedly had them,) should have the command of the brigade. Under this act the counties of Putnam and Rockland were added, and the number of the brigade altered.

I have already stated that the addition of territory to the relator's original district did not require a new election : neither did the change in the number. It could not be seriously contended that the latter change was anything more than nominal. The relator was, I think, lawfully placed in the command of the new brigade, and continued to hold it until the commission to the defendant was issued. If that commission was valid, it in effect removed the relator from the office of brigadier-general of his brigade.

I can see but little difference in removing an officer, and depriving him permanently of his powers. The one involves as much degradation as the other—and I think is equally prohibited by the constitution. That instrument was not designed

to guard the name of office simply, and to leave the substance unprotected—to retain the husk while it abandoned the fruit. The governor had not the power thus summarily to remove the relator. His removal could be effected only by a resolution of the senate, on the recommendation of the governor, or by the decision of a court-martial.

The power to issue the commission to the defendant is claimed for the governor under the act of April 17, 1854. By the fifth section of title two of that act, it is provided that brigadier-generals shall be chosen by the field-officers of their respective brigades. That does not alter the mode prescribed by the existing constitution. Neither does it, nor does any other part of the act, propose to remove those who held the office at the time; on the contrary, the ninth section of the same title directs that whenever the office of a brigadier-general is vacant, the commander-in-chief shall issue an order for an election to fill the vacancy. The forty-third section of the same title, which is supposed to confer the power upon the governor to commission the defendant without an election, and thus to supersede the relator, is as follows :—

"The commander-in-chief is hereby authorized and empowered to appoint and commission the brigade, regimental, and company-officers necessary to facilitate the organization of all military districts *not now sufficiently organized* to authorize an election. All officers superseded by such appointment shall become supernumerary officers."

It is not material to inquire whether this section, if it referred to permanent officers, would not be in conflict with the provision in the constitution relative to their election; and, as it does not appear to have been passed by a vote of two-thirds of the members present in both houses of the legislature, void for that reason, as it contains a qualification which I think makes it inapplicable to this case. The power can be exercised, if at all, only in cases where the district is not sufficiently organized to authorize the election of its officers. The statute does not call for a general re-organization of the militia. If it did, the provision last quoted would, for the time, annul the method of

choosing military officers provided by the constitution. If, as the defendant contends, the relator's brigade had not received a full organization, what was necessary to complete it? Its limits had been defined, the regiments and companies duly designated, and it was (it is to be presumed, as nothing appears to the contrary) duly officered. Nothing appears to show any defect in its organization, and as the power claimed was an innovation upon the constitution, it should be construed strictly, and the circumstances under which alone it could be exercised, (if it could be exercised at all,) should have been distinctly stated. The allegation of an inference or conclusion, without setting forth the facts on which it is founded, is insufficient.

The existing seventh brigade has been, as I have already shown, fully organized under the act of 1847, and placed under the relator's command. The act of 1851 (*ch.* 180, § 1,) simply authorized, or purported to authorize, the commander-in-chief to appoint and commission the officers necessary to complete the organization of all military districts *not then organized.* This could have no effect upon the relator's brigade, as that had been, and was then under a complete and efficient organization.

The act of 1854 (Title 4, Art. 1, § 3) expressly provides, that the division, brigade, regimental, and company districts, should continue to be and remain as the military districts of the state. They were to be subject to such alterations or consolidations as the commander-in-chief should see fit to make. It is unnecessary to inquire whether any, and if any, what changes would so far affect its organization as to render necessary or sanction an election or appointment of new officers, as no change of this brigade district has ever been made. The provisions in the act of 1854, as to the election or appointment of officers, were not, I think, intended to remove the then existing officers. The statute does not expressly require that, and an intention to create so great, unnecessary, and impolitic a change, ought not to be lightly inferred.

Upon the whole, it seems to me that the governor was not

authorized by the act of 1854, or any other statute, to displace the relator, or to appoint the defendant.   Both the commission to the defendant and the general order accompanying it were null and void.

A peremptory mandamus is awarded, but without costs.