## THE PEOPLE, *ex rel.* William C. Little, and WILLIAM C. LITTLE *vs.* HENRY A. SAMPSON.

Under subdivision 1 of section 432 of the code, an action in the nature of a *quo
warranto* may now be brought to try the title to a military office.   And in
every such action, judgment must be rendered upon the right of the defendant.

If a plaintiff seeks to present to the court, for adjudication, the title to an office,
he is bound to do so in conformity with this statute.   He cannot, by seeking
merely for an injunction, gain for himself all the benefits of a decision of such
a question, and deprive the defendant of the protection of a judgment which
shall release him from the obligations created by the apparent tenure of an
office, whose duties he is bound to perform, during his incumbency.

Where an action is brought for the purpose of obtaining a perpetual injunction
to restrain the defendant from exercising the powers and duties of a military
office, and from all interference therewith, and for the purpose of restoring the
plaintiff to such office, the plaintiff's claim to relief being based solely on the
ground that the defendant's appointment to his office is invalid and void, that
question must be decided in favor of the plaintiff before he can have the relief
asked for.

In such a case the defendant's title to his office should be directly put in issue,
and passed upon by the judgment; and if found to be invalid, it should be
so expressly declared by the judgment.

The act of April 16, 1851, passed for the purpose of facilitating the organization
of the new military districts, authorized and empowered the commander-in-
chief to appoint and commission the brigade, regimental and company officers
necessary to complete the organization of all military districts not then organ-
ized.   Under this act the defendant was appointed brigadier general, by the
governor, and placed in command of a brigade, in the place of the relator,
who held the command by assignment, under the act of 1847.   *Held* that the

The People *v.* Sampson.

governor had the power of appointment, and the only prerequisite to the exercise of the power was that he should deem the appointment necessary to complete the organization of the brigade district; he being the proper and ultimate judge as to the completeness of the organization; and that the fact of his having exercised the power, by appointing the defendant, was conclusive evidence that the necessity for the appointment existed.

*Held also,* that the legislature could confer on the commander-in-chief the power of appointment in such a case; and that the defendant's appointment came within the description of the class of cases in which the power might be exercised, and was therefore valid and conferred a complete title to the office.

MOTION for an injunction. The counsel for the respective parties signed a stipulation, embracing the following facts: 1. That the relator was, on the 18th day of June, 1844, a brigadier general of the 19th brigade of infantry, of the state of New York, duly commissioned, and had on the 13th day of May, 1847, performed military duty as such brigadier general, armed and equipped as the law directs, for more than one year within three years next preceding the 13th day of May, 1847. 2. That on the 13th day of May, 1847, the relator resided at Goshen in the county of Orange, within the second military division district of this state, and within the 8th brigade district of this state, and that he was the brigadier general oldest in commission, and highest in rank residing in the said districts, and who was in command on the first day of November, 1846. 3. That on the 9th day of June, 1847, the command of the said 8th brigade district was duly assigned to the relator by the governor of the state, pursuant to section five of an act entitled "An act to provide for the enrollment of the militia, and to encourage the formation of uniform companies, excepting the first military division of this state," passed May 13, 1847; and that on the said 9th day of June the relator was, and from thence hitherto has been, a resident of the said 8th brigade district. 4. That the relator accepted the command of the said brigade district and entered upon the duties thereof, and continued to discharge the duties thereof until the appointment of the defendant; that the relator immediately after his assignment to the command aforesaid, in pursuance of the directions of the governor of this state, divided the said brigade district into two regimental districts, according

to population, and caused the boundaries thereof to be filed in the adjutant general's office.    5. That thereupon the governor assigned the command of one of the said regimental districts to Christopher Feiro, the colonel residing in the said district highest in rank, who was in command on the 1st day of November, 1846, and of the other of the said regimental districts to Stephen C. Parmenter, the colonel residing therein highest in rank and who was in command on the 1st day of November, 1846, and that the said Christopher Feiro and Stephen C. Parmenter, from the returns in the adjutant general's office appeared to have performed military duty, armed and equipped, for one year within three years, next preceding the 13th day of May, 1847.    6. That the governor thereupon directed each of said colonels to divide their respective regimental districts into eight company districts, according to population, and to cause the boundaries thereof to be filed in the adjutant general's office ; and that in pursuance of said directions, each of said colonels caused such division of their respective regimental districts to be made into eight company districts, and the boundaries of such company districts to be filed in the adjutant general's office.    7. That the governor did cause each of said companies, regiments, brigades and divisions to be numbered, and the numbers thereof to be registered in the adjutant general's office.    8. That on the 15th day of March, 1854, the commander-in-chief appointed and commissioned the defendant, Henry A. Sampson, brigadier general of the 8th brigade, 2d division of the militia of the state of New York, under and in pursuance of the first section of an act entitled " An act for the enrollment of the militia, to abolish militia fines in certain cases, and to exempt members of uniform companies from working on highways and serving on juries," passed April 16, 1851.    That on receiving such appointment and commission, the defendant assumed the command of said 8th brigade, and has ever since continued to discharge the duties of brigadier general of the said 8th brigade.

The prayer of the complaint was that the defendant might be perpetually enjoined and restrained from exercising the powers and duties of the command of the said 8th brigade, and from all

The People *v.* Sampson.

interference therewith; and that the plaintiff might be restored to the command thereof, and for other and further relief.

*M. Swezey* and *C. H. Winfield*, for the relator.

*Cook & Gates*, for the defendant.

BIRDSEYE, J. This action is brought for the purpose of obtaining a perpetual injunction to restrain the defendant from exercising the powers and duties of commander of the eighth brigade district, in the second military division of the state, and from all interference therewith, and for the purpose of restoring the plaintiff to the command thereof. No judgment is asked which will deprive the defendant of his office, although the judgment sought for is claimed only on the ground that the defendant's appointment to his office is unconstitutional and void.

It is probable that the facts of this case are throughout precisely the same as those of the case of *The People, on the relation of Lockwood,* v. *Scrugham,* lately decided at the general term in this district;(*a*) but the stipulation stating the matters upon which the parties here rely as evidence, does not disclose all those facts.

It sufficiently appears that the relator was in 1844 duly elected brigadier general of the 19th brigade of infantry; that upon the initiation of the new militia system, sought to be organized under the act of May 13, 1847, (ch. 290,) he was found to be located within the 8th of the new brigade districts, and to possess the qualifications specified in the 5th section of that act, to entitle him to the command of that brigade district, and on the 9th of June, 1847, such command was duly assigned to him by an order of the commander-in-chief. The relator immediately entered on the discharge of his duties, and continued to discharge them until the defendant's appointment. On the 15th of March, 1854, the commander-in-chief appointed and commissioned the defendant as brigadier general of the 8th brigade, under and in pursuance of the first section of chapter 180 of the

(*a*) Ante, page 216.

laws of 1851, page 337. The defendant immediately assumed the command of the brigade, and has ever since continued to discharge the duties of brigadier general. But it nowhere appears whether the commander-in-chief in this case, as was done in that of Lockwood, issued a general order countermanding so much of the order of June 9th, 1847, as assigned the command of this brigade to the relator, and conferring the command on the defendant. Such was no doubt the fact. It is not now before me, however, and the case must be disposed of upon other grounds. Although if there were not other sufficient grounds for denying the injunction prayed for, I should have no hesitation in ordering the case to stand over, that proof might be put in, as to the action of the governor in countermanding the order which assigned the command of the brigade to the relator.

Two points arise upon the papers presented, either of which seems to me fatal to the plaintiff's application. The first one has already been adverted to. The judgment desired will work serious injury to the defendant, of such a character as the plaintiff has no right to ask this court to impose on him. The defendant, even though he may be enjoined according to the prayer of the complaint, will still retain his office and his commission, and will be bound to obey all the orders of his commander-in-chief, and for disobedience to them, will be liable to military punishment ; and the only effect of an injunction would be to compel him to disobey either the civil or military tribunal, and thus call down punishment upon himself from one or the other, without regard to the question which tribunal is right or wrong in its action.

The plaintiff's claim to relief is, of course, based solely on the ground that the defendant's appointment to his office is invalid and void, and that question must be decided in favor of the plaintiff before he can have the relief he seeks. But before this court should interfere, even if proper grounds for the interposition of the court exist, the plaintiff should so frame his application that the court, in granting it, will not of necessity inflict on the defendant an irreparable injury. The defendant's title to his office should be directly put in issue, and passed upon by the

The People *v.* Sampson.

judgment; and if found to be invalid it should be so expressly declared by the judgment. He will then have a justification for any acts of apparent disobedience to his military superiors. Under the first subdivision of section 432 of the code, it would seem that an action in the nature of a *quo warranto* may now be brought to try the title to a military office. In every such action, by § 436, judgment shall be rendered upon the right of the defendant. If the plaintiff seeks to present to the court for adjudication, the title to an office, he is bound to do so in conformity with this statute. He cannot, by seeking merely for an injunction, gain for himself all the benefits of a decision of such a question, and deprive the defendant of the protection of a judgment, which shall release him from the obligations created by the apparent tenure of an office, whose duties he is bound to perform during his incumbency.

The court cannot interfere by injunction, upon another ground. The plaintiff has shown no invalidity whatever in the defendant's title to his office. In my judgment, the defendant holds his office by a complete and valid title. As I have already observed, in the case of *The People, ex rel. Lockwood,* v. *Scrugham,* the acts of 1846 and 1847 abolished the former compulsory military system of the state, and sought to substitute, instead, a volunteer system. For the purpose of organizing the new system, the services of officers familiar with military affairs were to be employed, for what was clearly intended to be a very brief period. All the provisions of the act of 1847 provide for filling, permanently, every office in the newly enrolled forces, either by appointment from the governor and senate, (see § 3, as to major generals,) or by elections. (See §§ 11, 20, 23.) A very brief experience proved that, in this, as in many other instances, it was far easier to destroy the old system, than to create the new one which was to take its place. And ever since 1847, the state has been trying to perfect the new system which it was then intended to introduce. By § 5, of the act of 1847, it was made the duty of the commander-in-chief to assign the command of the new brigade districts, during this process of reorganization, to the brigadier general residing in the district, highest in rank,

who was in command on. the first day of November, 1846, and had performed certain specified services. Under this provision the command of the newly formed eighth brigade was assigned to the relator, in June, 1847. Similar assignments were made in all the other new districts. It was clearly the design of the law that an early organization should be effected. That it has not been, is obvious from the terms of every subsequent statute in relation to the military affairs of the state. By § 1, of chapter 307, of the laws of 1849, (page 438,) § 5 of the act of 1847 was in substance repealed. The commander-in-chief was thereby authorized and empowered, if in his opinion the public service should require it, to assign the command of any of the military, brigade or regimental districts, to any brigadier general or colonel residing therein, without regard to rank, and to designate any lieutenant colonel or major, to act as such. By § 2, the commander-in-chief might, also, in his discretion, appoint any individual to perform the duty of enrolling all persons subject to military duty, within the bounds of the company district in which he should reside.

It would seem that the enlarged discretion thus given to the commander-in-chief, in respect to assigning this temporary function of the command of the new brigade district during its organization, was not sufficient to enable him to effect the completion of the process. Whether it was that the officers then in command under these several assignments, feared to be displaced from command by the election of other persons to office in the brigades and regiments, or whatever else was either the motive or the reason, many of the districts remained unorganized. On the 16th of April, 1851, another act was passed for the purpose of facilitating such organization. By the first section of this act (*Laws of* 1851, *p.* 337,) the commander-in-chief was authorized and empowered to *appoint and commission* the brigade, regimental and company officers necessary to complete the organization of all military districts not then organized. Under this act, as already stated, the defendant was appointed and commissioned. The appointment was valid, and conferred a complete title to the office in question, if the legisla-

The People *v.* Sampson.

ture could confer on the commander-in-chief the power of appointment, and if the defendant's appointment came within the description of the class of cases in which the power might be exercised. By article eleven of the constitution, while major generals were to be appointed by the governor, with the consent of the senate, brigadier generals, brigade inspectors, and the field officers of the regiments and battalions, as well as the inferior officers, were to be elected by the votes of the forces, or of the officers of the forces, under their respective commands. By section six, of that article, in case that mode of election and appointment of militia officers should not be found conducive to the improvement of the militia, the legislature were authorized to abolish the same, and to provide by law for their appointment and removal, if two-thirds of the members present in each house should concur therein. The acts of 1849 and of 1851 were both passed by such a vote as was required by this provision of the constitution; and the power of appointment conferred by the latter act is, in my judgment, valid and complete. It is true the act of 1851 does not purport to abolish entirely the constitutional method of election, and to substitute a radically different system in its stead, but only to dispense with the elective system temporarily, and in favor of those officers who shall effect the organization of their commands in compliance with the requirements of the new statutes. But this consideration will be without weight until it is shown that the grant of entire legislative power over a subject does not confer power over all the parts of that subject, and that the power to abolish a system does not authorize a partial or temporary change in it. And even if that could be shown, a comparison of the three statutes of 1847, 1849 and 1851, will show that in the language of the constitution, the legislature have provided by law for the appointment and removal of militia officers. Taken together, all necessary provisions on these subjects will be found in these statutes.

The only remaining question is whether the defendant's appointment came within the class of cases in which the governor might exercise the power to appoint. In other words, was the

eighth brigade district organized or not organized on the 15th of March, 1854, the date of the defendant's appointment? In answer to this question, it might be sufficient to say that, the commander-in-chief is the proper and ultimate judge as to the completeness of the organization; for, by the act of 1847, his own act in commissioning the officers selected and appointed according to law, completes the organization of the several military districts of the state. But it is not necessary to stop at this point. The proof in the case warrants the court in deciding what is and what is not an organization of a military district. There is no question of the sufficiency of the pleading, nor any presumption that the district is duly officered, upon which the point can be disposed of, as was done in 20 *Barb.* 310. In this case it sufficiently appears that the present eighth brigade district was laid out under the act of 1847, and was duly divided into two regimental districts, as required by § 5 of that act. The command of each of those districts was duly assigned to the proper officer, under § 6. The regimental districts were duly divided into company districts, and the boundaries thereof filed in the adjutant general's office, and the companies and regiments were duly numbered and the numbers thereof registered in the adjutant general's office. Here the process of organization had stopped. It does not appear that a single man had been mustered into the service; that a single company had been enrolled, or had elected its officers. To effect a complete organization of the brigade, it was requisite that in each regiment six companies of at least forty men each, besides the commissioned officers, should have been enrolled, and should have elected the officers of the company; that those officers should have elected the field officers of the regiments, and that the field officers of the regiments should then have chosen the brigadier general and inspector general, and then that the commander-in-chief should have issued commissions to all these officers. After the performance of all these acts the brigade was fitted for service, for the discharge of all the duties that might be imposed upon it, either during peace or war. Until

Citizens' Mutual Loan Association *v.* Webster.

all these acts were completed, the district was, within the language of the act of 1851, "not organized."

Of course, the commander-in-chief had the power of appointment, and the only prerequisite to the exercise of the power, was that he should deem the appointment necessary to complete the organization of the brigade district. The fact that he has exercised the power by appointing and commissioning the defendant, is conclusive evidence, here and everywhere, that the necessity for the appointment existed.

The application for the injunction must be denied, and judgment is rendered in favor of the defendant.

[KINGS SPECIAL TERM, July 6, 1857. *Birdseye*, Justice.]