THE PEOPLE OF THE STATE OF NEW YORK ex rel. SAMUEL FAILE, Respondent, v. ELISHA P. FERRIS and GILBERT S. LYON. Appellants.

*Mandamus—when it should not be issued—Officer annually elected—when he holds over.*

On and prior to April 26, 1878, the defendant Ferris was a trustee and the president of the village of White Plains. On that day the Legislature amended the village charter by providing for an election of trustees on the second Tuesday, and an election by them, on the third Tuesday of May, 1878, of a president, not a member of the board. It also provided that the term of office of the then trustees should expire on said third Tuesday; the then village officers to hold office till their suc. cessors qualified; the president to preside at all meetings of the trustees. On the third Tuesday of May the trustees, elected under the act of 1878, held a meeting for the purpose of electing a president. Ferris, the former president, claimed the right as president of the village, to act as presiding officer, and by his casting vote the defendant Lyon was elected president. Ferris' right to preside being contested, one of the trustees applied for and procured an order directing a *mandamus* to issue commanding Ferris not to preside at any of the meetings of said trustees, and not to vote on the election of any officer by the trustees, and commanding Lyon not to take the oath of office as president, and not to attempt to exercise any of the powers or duties devolving upon the president.

*Held*, that the writ was improperly issued; that if there was a vacancy in the office of president, the remedy was to apply for an order requiring the trustees to meet and elect one, and that if there was an unlawful intrusion into the office, then the remedy was by an action in the nature of a *quo warranto*.

The question as to whether or not, in the absence of express legislation, a village officer, to be annually elected, will hold over until his successor qualifies, considered by Gilbert, J.

Appeal from an order directing a peremptory mandamus to issue, enjoining and restraining the defendant Ferris from presiding at any of the meetings of the trustees of the village of White Plains, and from voting on the election of any of such officers of said village, as by statute are made elective by said trustees, and enjoining and restraining the defendant Lyon from taking the oath of office as president of the said village, and from attempting to exercise any of the powers or duties devolving upon the president of said village.

The defendant Ferris was president of the village of White Plains, on and prior to April 26, 1878, having been elected in 1877. On that day the Legislature passed an act amending the

charter of such village, and among other things provided for dividing the village into three wards, and for the election of two trustees for each ward (chap. 179 of 1878) ; also for the election of such trustees on the second Tuesday of May, 1878, and an election by them on the third Tuesday of May, 1878, of a president who should not be a member of the board. It contained a provision that the terms of the trustees should cease and determine on the third Tuesday of May, 1878, and also provided that the officers of the village should be a president, clerk, treasurer, police justice, collector of taxes and assessments, two trustees of each ward, and such other officers as the board of trustees should appoint, and then provided as follows : "The present incumbents shall hold their office until their successors shall be duly elected or appointed and qualified as provided by this act." It also provided that the president should "preside, when present, at all meetings of the said board" of trustees.

Under the charter of the village as it existed at the time of the passage of this act, the president was required to be one of the trustees and elected by them. An election of trustees was had as provided by the act in question, on the second Tuesday of May, 1878, and they met on the third Tuesday of May. Mr. Ferris was not elected a trustee at the election held on the second Tuesday of May, but was present at the meeting on the third Tuesday, and assumed to act as president. On a tie vote of the trustees for a president, he voted for the defendant Lyon as president, who was by the casting vote of Mr. Ferris declared elected as president. The relator, being one of such trustees, applied to this court at Special Term for an order restraining Mr. Ferris from acting as president of such village, and Mr. Lyon from taking the oath of office or doing any act as president under such election, and the court made the order appealed from.

*C. Frost*, for the appellants.

*Close & Robertson*, for the respondent.

Gilbert, J. :

The office of the writ of mandamus is to compel the performance of a legal duty in the performance of which the relator has

a legal interest, and for the enforcing of which he has no other specific legal remedy. (*People ex rel. Stevens* v. *Hayt*, 66 N. Y., 606, 607.) The effect of the writ in this case is merely to enjoin and restrain the respondents, Mr. Ferris, from exercising the functions of the office of president of the village of White Plains, in respect to which he is, in any point of view, *functus officio*, and Mr. Lyon from taking the oath and exercising any of the powers and duties of the same office, to which he claims to have been duly elected as the successor of Mr. Ferris. The writ does not command either of the respondents to do any act whatsoever. If Mr. Lyon was not elected to that office, the office is vacant, and the court may compel the trustees to proceed to a new election. (Tapping on Mand., 187; *Matter of Gardner*, 68 N. Y., 467–470.) No one else claims the office, and there is no pretence that any other person has been chosen to fill it. I do not perceive what interest the relator can possibly have, either personally or as one of the general public, in continuing a vacancy in the office ; for such vacancy merely serves the very questionable purpose of suspending, in a large degree, the operations of the village government. If this proceeding were one to determine disputed questions as to the title to the office, it would not be entertained. (*People* v. *Stevens*, 5 Hill, 616–627 ; *People ex rel. Coleman* v. *Dikeman*, 7 How., 124; *People ex rel. Bradley* v. *Stevens*, 2 Abb. [N. S.], 348; 68 N. Y., *supra*.) But that cannot be its object, for no one besides Mr. Lyon claims or has any colorable title to the office. The remedy provided by law for determining the title to an office is an action in the nature of *quo warranto*. (Code of Proc., § 432.) The necessity of resorting to that remedy cannot be evaded by disabling a citizen from entering upon an office to which he claims to have been elected by means of a writ of mandamus, and then claiming that because he has not made an actual entry into the office, the action of *quo warranto* will not lie. The answer is that mandamus will not lie for the purpose mentioned, and that when the writ is dismissed, no remedy against Mr. Lyon will be necessary if he does not enter; and that if he does enter, the action of *quo warranto* may be brought.

I have searched diligently for a precedent for such a proceeding as that now before us, but I have not been able to find one. The

nearest approach to one which I have found, is the case of *The People ex rel. Lockwood* v. *Scrugham* (20 Barb., 302). In that case the writ commanded the respondent to permit the relator to exercise the office of brigadier general without interruption or intrusion from the respondent. But that order was reversed at General Term. (25 Barb., 216.) I think that, for the reasons stated, the writ should be quashed.

But if Mr. Lyon has color of title to the office, he should not, if the power to do so exists, be restrained in the assertion of his right to the profits, emoluments and advantages thereof. He has a legal right to have his claim to the office tried in legal form, and as an indispensable preliminary to the exercise of that right, he must take the oath of office. To compel him to refrain from taking the oath, therefore, is to partially disfranchise him. An act which cannot be tolerated. That Mr. Lyon has color of title to the office, I think, is reasonably clear.

When the trustees came together on the third Tuesday of May last, they performed the duty prescribed by title two, section five of the act of incorporation, as amended in 1878 (ch. 179). They met at the appointed time and at the place designated by said act. No other proceeding was necessary to "form a board." An assembly of public officers, duly convened, is *ipso facto* a board. By section six of said title, it is made the duty of the president of the village, among other duties, to preside, when present, at all meetings of the board of trustees, and to give the casting vote in case of a tie vote in said board. The important question on this subject, therefore, is whether Mr. Ferris was the president of the village, when he gave the casting vote by which Mr. Lyon was elected his successor. If he was, he had the right and it was his duty to preside at that meeting and to give such casting vote. The statute contains no exception depriving him of that right, or exempting him from that duty, because the proceeding was one to elect the president of the village. Its language is alike plain and comprehensive, and, as before stated, it requires him "to preside at *all* meetings of the board when he is present, and to give the casting vote in case of a tie vote in said board."

Prior to the amendment in 1878 (Laws 1878, chap. 179), the act incorporating the village provided that the trustees, on the

Tuesday succeeding each annual election, should form a board and elect, by a majority of votes, one of their number to be their presiding officer and the president of said village. (Laws 1867, ch. 518, p. 1415, § 5.) Mr. Ferris was duly appointed presiding officer and president of the village in May, 1877. The time fixed for the annual election was the second Tuesday of May, and the act of 1878 expressly terminated the offices of the trustees then in office on the third Tuesday of May, 1878. As the new board were required to meet and act on the last-mentioned day, it cannot be held that the term of office of the old board continued after the meeting of the new board. On the contrary, the Legislature evidently intended that the functions of the old board should cease, and those of the new board should begin simultaneously. Mr. Ferris' functions under his appointment as presiding officer also ceased, for the reason that those functions had been taken away from that office and transferred to the president of the village. It is conceded that Mr. Ferris was the president of the village up to the third Tuesday of May, 1878, but it is contended, on behalf of the relator, that he held that office only by virtue of his other office of trustee, and that his functions of president of the village ceased upon the termination of his office of trustee. I am of a different opinion. The act of incorporation, as it stood when Mr. Ferris was elected, provided that the trustees, and such other officers as the trustees should legally appoint should be officers of the village. As has been stated, power to appoint the president of the village was expressly granted to the trustees. They were also authorized to prescribe his duties. (Laws 1867, ch. 518, p. 1414, tit. 2, §§ 1, 5, 11.) On the third Tuesday of May Mr. Ferris legally held two independent offices in the corporation. He was both trustee and president of the village. The provision that the president should be chosen from the trustees had been abrogated. His term of office as president of the village was not fixed otherwise than by the provision that the trustees should annually elect a president of the village. The right of officers to hold over until their successors should be qualified was not expressly given to him, but was confined to the trustees. Treating the act of incorporation as impliedly restricting his term of office as president of the village

to one year, (and it can have no greater effect on that subject), the question arises whether his powers and duties as such officer ceased at the expiration of that term. Ch. KENT says that that is a question not definitely settled. (2 Kent Com., 7th ed., 339.) In *Phillips* v. *Wickham* (1 Paige, 595), Ch. WALWORTH remarked that he was not aware of any general principle of the common law which authorizes *all* civil or corporate officers to hold over after the time for which they were elected, until their places are supplied by others, and that the numerous statutes, both here and in England, giving such authority in express terms, seemed wholly inconsistent with any such common-law principle. But the case before him did not require a decision on the point. In *Overseers of the Poor* v. *Sears* (22 Pick., 130), SHAW, Ch. J., said: "The better opinion is that town officers thus annually chosen hold their offices until others are chosen and qualified in their place." So in Connecticut and Maine, and many other States of the Union, an officer elected for the year ensuing is, in the absence of any other restrictive provision, entitled to hold beyond the year, and until he is superseded by the election of another person in his place. (*McCall* v. *Byram Manf. Co.*, 6 Conn., 428; *South Meadow Dam. Co.* v. *Gray*, 30 Me., 547; See, also, Dill. Mun. Corp., ch. 9, § 158, and cases cited.) This doctrine was mentioned with approval in *People* v. *Runkel* (9 Johns. R., 158), on the authority of a case in 1 Strange (*Foot* v. *Prosse* [m. p.], 625), and another case (*Queen* v. *Corporation of Durham,*) in 10 Mod. (146), and in *Olcott* v. *Tioga R. Co.* (27 N. Y., 556), SELDEN, J., held that the president of a corporation (a railroad company), who was elected for one year, would hold over until another president was elected, without any special provision in the charter to that effect. While this position is not free from doubt, I think it is sustained by a preponderance of authority. It may also be inferred in this case that the Legislature intended by the act of 1878 to designate the president of the village, then in office, to preside at the meetings of the board of trustees until his successor should have been elected. They required that the president of the village should preside at *all* meetings of the board. No one but the president then in office could perform that duty at the first meeting, or at any subsequent meeting of the board, before his successor had been chosen. That

requirement, therefore, could have no application at those meetings unless Mr. Ferris should hold over.

It is, therefore, at least a fair question whether Mr. Lyon was not duly elected president of the village. No other person claims a right to the office. The mandamus in this case was not sought for the purpose of maintaining the right of any person to the office.

I am of opinion that the writ should not issue in such a case, but that when only one person claims an office, and has color of title thereto, he should be permitted to qualify, and that the only proper remedy to try his title to the office is an action as before stated. (See *People ex rel. Dolan* v. *Lane*, 55 N. Y., 217.)

The order appealed from should be reversed, and the writ quashed, with costs and disbursements.

DYKMAN, J.:

The office of a mandamus is to require some person, corporation, or inferior tribunal or body, to do some particular thing specified in the writ pertaining to their office or duty. (3 Black. Com., 110.) It issues as a favor and not as a right, in the exercise of discretion, where there is no adequate remedy. By it corporations, ministerial officers and inferior bodies may be compelled to exercise their functions according to law, but it goes to command the performance of a legal duty, and will only be allowed to give effect to a clear legal right. These are some of the familiar principles applicable to the remedy by mandamus, and are sufficient to show that the writ cannot be ordered in this case.

The order directs the mandamus to issue, not to command the performance of any duty, but to restrain Elisha P. Ferris from presiding at any meeting of the trustees of White Plains village, and from voting on the election of any village officer, and to restrain Gilbert S. Lyon from taking the oath of office as president of the village, and from exercising any of the powers of a president. It is thus made to do a prohibitory instead of a mandatory duty, and really to perform the office of an injunction.

Let it be assumed that Mr Lyon was not regularly elected president of the village. Yet he cannot be restrained from exer-

cising the functions of his office by mandamus. With us his title to the office can only be tried in a civil action. If he was elected president, then he has the right to the office, and cannot be restrained in its exercise by mandamus ; and if he was not elected, then there exists a vacancy. In either case nothing can be effected by mandamus. Neither he nor Mr. Ferris are commanded to do anything. On the contrary, Mr. Ferris has done what he considered his duty and proposes to do no more.

It is thus shown that the end sought cannot be attained by the remedy invoked, and that the order, for that reason, should be reversed.

Present—GILBERT and DYKMAN, JJ.; BARNARD, P. J., not sitting.

Order reversed.