THE PEOPLE *ex. rel.* ATTORNEY GENERAL *v.* HENRY TIS-
DALE.

Douglass.
1d  59
74  283
1d  59
137  °718

Where a person intrudes himself into an office, in consequence of the unlawful decision of a board of canvassers, the remedy, by motion to this Court for leave to file an information in the nature of a *quo warranto* to try the right to such office, is proper.

The Court have a discretion, as to the granting of such motions.

The statute makes the evidence contained in the ballots of voters, the foundation of the statements to be prepared both by the inspectors of election and by the county canvassers, and also of the certificate of election issued by the latter.

The ballots of the electors, as shown by the statements of the inspectors of election, are the only evidence upon which the county board of canvassers can act. They have no power to examine witnesses, or receive other evidence, to prove for whom a ballot was intended.

Nor would any other evidence be admissible, on a trial before a jury of an issue awarded from this Court, in a proceeding by information in the nature of a *quo warranto* to try the right to an office; but the simple inquiry would be, what was the intention of the elector, expressed by his ballot.

A ballot for *J. A. Dyer*, cannot be counted for *James A. Dyer*. It does not contain the name, the designation by written characters, of *James A. Dyer;* and no evidence is admissible to show that it was intended for *James A. Dyer.*

But where the designation of an individual, on a ballot, is by an abbreviation sanctioned by common usage and universally understood, the ballot may be counted for

the person for whom it was evidently intended.  Thus, a vote for *Jas.* A. Dyer, may be counted for *James* A. Dyer.

Nor, it is presumed, would a slight error in the spelling of a name, on a ballot, prevent the ballot from being counted for the person for whom it was evidently intended.

MOTION for leave to file an information in the nature of a *quo warranto*, to inquire by what right Henry Tisdale claims the office of Sheriff of Jackson county.

*A. B. Bates*, for relator.

*Chapman & Johnson*, contra.

FELCH, J. delivered the opinion of the Court.   This is an application for leave to file an information in the nature of a *quo warranto*, to test the right of Henry Tisdale, the respondent, to hold the office of Sheriff of Jackson county.

The affidavit of James A. Dyer, upon which this application is founded, states that he, said Dyer, and said Tisdale, and one Harvey Austin, were put in nomination for said office of Sheriff, previous to the general election in the fall of 1842, and were the only candidates for that office ; that subsequent to the holding of said election, said Tisdale was, by the board of canvassers, declared duly elected to said office, and has taken the oath and entered upon the duties thereof; and that the votes given at said election, as returned to the board of canvassers, were as follows, viz:

For Henry Tisdale, 822 votes,   For H. Tisdale,   1 vote.
   " James A. Dyer, 820   "      " Jas. A. Dyer 1   "
   " Harvey Austin, 388   "      " J. A. Dyer,   6   "

The affidavit further shows that the affiant is informed by four persons, that they cast votes, at said election, for J. A. Dyer, and by one person, that he cast his vote for

The People *v.* Tisdale.

Jas. A. Dyer, for said office of Sheriff, and that they intended thereby to vote for said James A. Dyer.

Deponent further says, that he has long been a resident of Jackson county, and is generally acquainted with the inhabitants thereof, and that he does not know but one person, other than the deponent, by the name of Dyer, in said county; that he is the brother of the deponent, and that his name is Milo E. Dyer.

The deponent further states his belief that the vote cast for Jas. A. Dyer, and the four votes for J. A. Dyer, were intended to be cast for the deponent, and that, had they been counted for James A. Dyer, he, the deponent, would have been declared duly elected by a majority of the votes, to said office of Sheriff.

In applications of this nature, the Court has discretion to grant the leave asked, or to refuse it. When, upon the case made by the affidavits, it appears that the judgment of the court in the case would be unavailing, the court will refuse the motion. *Commonwealth* v. *Athearn*, 3 Mass. R. 285; *The People* v. *Sweeting*, 2 John. R. 184. So, if upon examination of the affidavits, it should appear that upon the facts stated, the court would not, upon legal principles, interfere in the matter, it would of course be improper to grant leave to file the information. The relator is supposed to have exhibited his whole case in its most favorable aspect, and the court will look to that case, in the exercise of a sound discretion, in granting or refusing the motion.

The case made by the affidavits presents but a single point. If the votes given at the election for Jas. A. Dyer, and those given for J. A. Dyer, or the latter alone, ought to be counted for James A. Dyer, then the latter was duly elected to the office, and the respondent improperly exercises its franchises. The relator does not claim that these votes unexplained should be counted for James A. Dyer;

but he claims that they were in fact given for him, and that he can give testimony to show that such was the intention of the voters by whom they were deposited in the ballot box; that he has long been a resident of that county, and is generally known by the inhabitants thereof; that there is but one other person in the county by the name of Dyer, and that his name is Milo E. Dyer, and that he, deponent, was one of three candidates for the office of Sheriff at the election. If such testimony would be admissible, and if produced, would have the effect claimed by the relator, this motion should be granted.

The statute, R. S. 11, § 4, provides that the voting at the general election of this State, "shall be by ballot in writing, on a paper ticket, containing the names of the persons for whom the elector intends to vote, and shall designate the office to which each person so named, is intended by him to be chosen;" and further, R. S. 8, § 8, that "the person having the greatest number of votes, shall be deemed to have been elected." After the election the inspectors are required to draw up two statements of the result in writing, " setting forth, in words at full length, the whole number of votes given for each office, the names of the persons for whom such votes for such office, were given, and the number of votes so given to each person." R. S. 14, § 5. When these returns come before the county canvassers, they are required to make a statement of the same, in which " the whole number of votes given, the names of the candidates, and the number of votes given to each, shall be written in words at full length," and to proceed to determine the persons elected, and to certify their determination. R. S. 16, § 7 & 8.

These statutory provisions designate the acts which shall constitute an election to the office, and the evidence of such election. The voter declares his designation of the individual of his choice, by depositing his ballot in

writing on a paper ticket containing the name of the person for whom he intends to give his vote. The law has provided this as the means, and the only means, by which he can effectually give evidence of his choice. The evidence contained in his ballot is made the foundation of the statements to be prepared, both by the inspectors of the election and the county canvassers, and also of the certificate of election issued by the latter. In *The People ex. rel. Yates* v. *Ferguson*, 8 Cow. R. 102, it is said that " the canvassers have no means of examining witnesses or of receiving any evidence besides what was upon the ballot itself," and in *The People* v. *Van Slyck*, 4 Cow. R. 297, their duties are expressly declared to be ministerial. " They must ascertain the number of votes given, but they have no right to controvert the votes of the electors." In other words, the vote itself is the only thing which can be received and acted upon as evidence by them. This is, nevertheless, the very tribunal to which the law has committed the determination of the result of an election, and upon whose certificate the elected assumes the duties of the office with the full right to hold until ousted by the mandate of a higher tribunal. We are here to inquire whether, when the question as to the result of an election is presented to this Court, testimony of different kind can be admitted.

It is not contended that the votes given for J. A. Dyer, can be counted for James A. Dyer, unless evidence is admissible to show that the voters intended them for him. The *name* is required by law to be written upon the ballot. This is not the name of James A. Dyer. It is not the designation by written characters, of that individual. The constitution and the statutes having determined who shall be voters, and the manner of exercising that high prerogative, it is difficult to see how a different rule as to the evidence of the intention of a voter, can obtain on an

issue joined in this Court, from that which prevails before the canvassers.

It seems to be supposed that, before a jury, on an issue awarded from this Court, to try the right to an office, the inquiry will be what was the intention of the voter, by the initials used in his vote. This the relator offers to show by oral testimony. It is a full answer to such claim, to say, that the statute has not merely authorized the voter to express his intention by designating an individual for the office, but has required him to do it in a particular manner, to wit. by depositing a ballot with his name written upon it. Any other manner, however fully it should designate the person intended, would be ineffectual. The illiterate voter who is unable to read a letter upon his ballot, and who is consequently exposed to deception by which he may aid in electing the very candidate he opposes, can express his intention effectually in no other way. The blind man may exercise the right of an elector, but he must do it by a written ballot, though he may have no knowledge of what is written upon it.

The inquiry, before a jury, on the trial of an issue of this character, would not be what the voter intended, but what intention he had expressed in the manner pointed out by statute, to wit. by his written ballot; and this of course would confine the testimony to the ballots themselves, or the proper certificate of the contents. Extraneous testimony of intention would, of course, be rejected before a jury, as well as before the canvassers.

If we were to give a forced construction to the statute, by which extraneous and parol evidence of the intention of the voter, not expressed by his ballot, were to be admitted, I fear we should adopt a principle of most dangerous tendency. Where should the rule find its limits? If, when an initial only is used, the testimony of the voter, as to his intention, may give it to one whose name is not ex-

pressed by it, why should not the same testimony of intention change a vote given by the voter who cannot read, and finds he has been deceived, and given his ballot for one whom he never intended to support? It is to be feared, too, that such a practice once adopted would open the door to constant litigation, and the frequent commission of the crimes of perjury and subornation of perjury. Such a result, it is true, ought not to be presumed; but we cannot close our eyes to the tendency, in that respect, of the practice sought to be established by the relator.

Upon a view of the whole question, we are all of the opinion that neither the canvassers, nor a jury, on the trial of an issue of fact from this Court, to try the respondent's right to the office of Sheriff, could go behind the votes given at the ballot boxes, to ascertain the intention of the voters.

We are aware of the decision of this question, in the case of *The People ex. rel. Yates* v. *Ferguson*, by the Supreme Court of the state of New York. The decisions of that highly respectable Court are always entitled to great weight; but, in a question presented here for the first time, of great practical importance, we cannot surrender the convictions of our own minds to an authority whose reasoning does not convince us.

Another question is presented upon the admissibility of the vote given for Jas. A. Dyer. The canvassers had the whole votes before them, from which to determine who was elected. They could receive no testimony of intention of the voters, but were to ascertain that intention from the votes. We would not say that a slight error, in the spelling of a name, for instance, should prevent the vote from being counted for the person for whom it was evidently intended. So we can see no reason why a well known abbreviation, as Geo. for George, Thos. for Thomas, should not be used and counted according to the evident

intention of the voter.    All writing consists of mere arbitrary signs; and, where the signs, used fully, and according to the common use of an entire community, express the name of the individual, it is sufficient.    The abbreviations above mentioned, fully, and to the common understanding of all, as arbitrary signs, express the names thereby intended; and so do the letters which constitute the full name.    In such case there is no need of going into extrinsic testimony, in order to ascertain the intention of the voter.    The name is upon the vote, written in a manner sanctioned by common usage, and understood by all, to mean the name of the person intended and no other.    The acceptance or rejection of the vote for Jas. A. Dyer, does not, however, change the result of the election; and, whether it was properly or improperly rejected in the count of votes for James A. Dyer, it can be no cause for entertaining the information.

When a person intrudes himself into an office, in consequence of an unlawful decision of a board of canvassers, the remedy here sought is proper.    But, from the view which we here take of the subject, we are satisfied that there was no error, affecting the rights of Dyer, in the canvassing of the votes; and that, so far as the question here presented is concerned, the same rule of evidence must apply before a jury empannelled to try the respondent's right to the office, that obtained before that board. We are, therefore, of opinion that the motion for leave to file an information should be denied.

*Motion denied.*