THE STATE OF IOWA, *ex rel.* BYERS *v.* BAILEY, COUNTY JUDGE, *et al.*

In *mandamus*, the defendant answers or pleads to the writ, and not the information; and error cannot be assigned upon an order of the court, allowing the relator to amend his information.

In *mandamus*, the relator may be permitted to amend both the information and the writ.

In *mandamus*, against a county judge, and other canvassers of a county election, to compel them to canvass the returns and declare the result, it is not necessary to allege, either in the information or the writ, an express demand and refusal to make the canvass.

The State of Iowa, ex rel. Byers, v. Bailey, County Judge, et al.

In such a case, the act to be performed is one of a purely public duty, where no individual right or interest is concerned, and the law points out the whole duty, with the time and place of its performance, and this is equivalent to a demand ; and omission, or a neglect of that duty, or still more, an imperfect performance of it, is equivalent to a refusal.

Where county canvassers allege, in answer to an alternative writ of mandamus, commanding them to canvass the returns and declare the result, that they rejected the returns from two townships, because they were not made in accordance with the requirements of law, it becomes necessary for the court to pass u; on the question of their right to reject the returns, and for this purpose it is requisite that it should have before it the causes of the rejection, even to the specific nature of the defects ; and the court, on motion of the relator, may rule the county canvassers to make a more specific statement of the causes for such rejection, and the defects existing in the returns.

It is no valid objection to a writ of mandamus, directed to a board of canvassers of a county election, that some act, or some part of the duty enjoined, is to be performed by one of their number, and that it does not pertain to the others, if the act to be done is a part of the principal object intended, for the performance of which the one is alone responsible.

Where the clerk's attestation of a writ states that the seal of the court is affixed, and the transcript of the record shows a scroll, with the word "seal" inclosed, the transcript furnishes sufficient evidence that the writ was under the seal of the court.

The expression, "party beneficially interested," in section 2183 of the Code, is not to receive a close construction, but is to be applied liberally, and so as to promote the ends of justice.

Where in a proceeding by mandamus, to compel a board of canvassers to canvass the returns and declare the result of an election, and especially to count the returns from two townships which had been rejected, the relators, eighty-three in number, averred that they were voters, and residents of the townships whose returns were rejected, and that they were all the voters in the said two townships, except seven, who voted at said election ; Held, That the relators came within the terms of section 2183 of the Code, and were "parties beneficially interested," according to the nature of the case.

A writ of mandamus may properly be directed to a board of canvassers of a county election, or may be directed to the county judge alone.

Where to an alternative writ of mandamus directed to a board of canvassers of a county election, one of the defendants answered that he was not, at the time of making his answer, a justice of the peace, and could not legally act further as a member of the board of canvassers ; Held, That the writ would not be quashed, because one of the justices had become functus officio, but that it should be amended, so as to require the county judge to take to his assistance two justices of the peace, and canvass the returns.

The duty of a board of canvassers of an election is mainly ministerial, al-

though some times, and on some points, it becomes judicial, or, at least, discretionary.

It is not within the discretion of a board of canvassers of an election, to receive or reject the returns. If they may be known as returns, it is their duty to receive them, and count the votes.

To decide what votes or returns shall be rejected and not counted, belongs solely to that tribunal which is empowered to determine ultimately upon a contested election.

It is the duty of a board of canvassers of an election, to count all that are known as returns; and where they have not counted all, but have rejected a part of the returns, which they had no authority to do, and have declared a result, which is not the true one, they have not legally performed their duty, and may be commanded to do that which has not legally been performed.

Where the returns of an election are so uncertain in their form or nature, that they cannot be known as such, or where the statement of the number of votes received by any person or object, is so confused or indefinite, or uncertain, that it cannot be ascertained with clearness, the whole returns, or the vote on the one subject on which they are uncertain, may be rejected by the board of canvassers; but if they may be known as returns, they are not to be rejected on a question of sufficiency.

Where to an alternative writ of mandamus, commanding the board of a county election, to canvass the returns, and declare the result, on the question of removing the county seat, or show cause, &c., the defendants answered, that the returns from the townships of N. W. were so imperfect, that they cannot say how many votes were cast on the question of removing the county seat, nor how many were cast for either place, and that no poll list was returned from N. W.; and where, the returns being before the court, the returns from N. W. stated that at such election, defining it, "there were thirty-seven ballots cast for the following officers, to wit: For county surveyor, C, F. received thirty-seven, (37)," and then, after naming several other county officers and the persons voted for, with the number received, (which on all the county officers was thirty-seven), the return further states:— "For county seat—N. H. received thirty-seven (37);" Held, That nothing appeared that rendered the paper doubtful as a return, and that it was manifest that the whole number of votes cast, was thirty-seven, and that they were all cast for N. H.

In a proceeding by mandamus, to compel a board of canvassers to canvass the returns of an election, and declare the result, the court acts upon and through the canvassers, and evidence cannot be received showing that the word "fifty," in one of the returns, has been altered to forty, so as to make the return show forty-three, instead of fifty-three

The State of Iowa, ex rel. Byers, v. Bailey, County Judge, et al.

votes; nor can the court command the canvassers to regard and treat the word as fifty, in making the canvass, and declaring the result.

*Appeal from the Chickasaw District Court.*

TUESDAY, DECEMBER 14.

MANDAMUS. On the 5th of April, 1858, an election was held in the county of Chickasaw, upon the question whether the county seat should be removed from Forest City to New Hampton. The county canvassers rejected the returns, and all the votes cast in the township of North Washington, which were thirty-seven in number, and all of which were cast in favor of New Hampton. It is alleged that fifty-three ballots were cast on this question in the township of Deerfield, and that all of them were cast in favor of New Hampton, but that the canvassers illegally excluded ten of those votes, counting but forty-three in favor of New Hampton; that all of the above mentioned ballots cast in both the said townships, should have been counted in favor of New Hampton, which would have shown a majority of six votes in favor of that place, there having been cast four hundred and thirty-eight votes in favor of New Hampton, and four hundred and thirty-two in favor of Forest City, whereas, the canvassers declared the result to be in favor of Forest City, and the said county judge so entered the same of record, and declared Forest City to be the county seat of the said county. A demand and refusal are alleged.

The respondents made return to the alternative writ, answering various objections to the writ, and moving that the same be quashed, all which objections appear in the opinion of the court. The answer was held insufficient, and the motion overruled, and a peremptory writ was awarded. The respondents appeal.

*Ainsworth, McClintock & McGlathery,* for the appellants.

*O. Crosby,* for the appellee.

WOODWARD, J.—The peremptory writ commands the canvassers to canvass the votes cast at the election, counting all the votes cast, and to make a true abstract of the same, or to show cause. And Lorenzo Bailey, the county judge, is commanded, upon making such canvass and abstract, to make a proper record of the same, and declare the true result in accordance with such true abstract, or show cause why such acts should not be done.

[This cause is, in its nature, like that of *The State, ex rel. Rice* v. *The County Judge of Marshall county, ante,* 186, and in very many of its details, is very similar to that. The errors assigned, in more general terms, cover the objections made to the writ in the motions to quash, and the matters set up in the answer. For the sake of brevity, we shall omit a formal statement of these, but will endeavor to combine them according to their subject matter, passing by none which are deemed, of importance.]

I. The fifth assignment of error relates to the allowing an amendment of the relator's affidavit, on which the writ issued. [In the motion of the respondents to quash the alternative writ, their tenth cause was, that it did not show by whom, or at what time or place, a demand was made. It is not very clear whether the books, (as Tap. on Mand., 282), mean, that the information must be specific as to person, time and place of demand, or whether this refers to affidavits introduced, as in the nature of preliminary evidence to support the application. But passing this, and coming to the question whether amendments are allowable, a clear case is not made. If the amendment was in the information only, the assignment of error does not lie. The respondents answer, or plead to the writ, and not to the information. Both the assignment of error, and the amendment itself, which is made apparent to the court, seem to show that it was in the information only, for there is such an one in the latter, and the error alleged is to that, and not an amendment of the writ.

But we are willing to look at the question itself, and do

not desire to place it upon merely technical grounds. ] It is true, that this proceeding in mandamus, is regarded as criminal, in part. It is so in form and name, and also in some measure, as it looks to a violation of official duty, either by omission or commission. But yet in its substance and real nature, it is a civil remedy. The great reason which forbids the amendment of an indictment, namely, that it is the finding of the grand jury under their oath, upon evidence before them, does not apply here. There is no such reason existing against the relator's amending — that is, changing—his own relation, nor against the prosecutor's amending his writ. [In England, of late, the statutes have been framed upon this reasonable view, and extended the right to this proceeding. The terms of our statute are broad enough to permit amendments to apply here, and if the court should hold that they do not, the same reasoning must forbid it in other special proceedings, and, in fact, in all but actions proper; but this would be opposed to that which we believe to be the spirit, and the beneficial intent of our statute. And see Tap. on Mandamus, 6 and 334.]

As this point is distinctly made, and is one of practical importance, it has seemed proper to suggest these views, although the case need not be made to depend upon the determination of it, for in the case against the judge of Marshall county, before named, we have held that an express demand and refusal are not essential in a case of this nature, it being one of a purely public duty, where no individual right or interest is concerned, and where there is no one person upon whom either a right or a duty devolves to make a demand. The law does not require a useless thing. It points out the whole duty, with the time and place. This is equivalent to a demand. And omission, or a neglect of that duty, and still more, a performance attempted, but done in a manner which that law says is not a performance, is considered equivalent to a refusal.

The cases are quite numerous in the books, in which de-

mand and refusal are not alleged, although the statement of the case and of the pleadings may not be full, and in which no exception is taken on that account. Of this description are, *Ex rel. Davenport* v. *Comrs. of Dubuque*, Morris, 31 ; *Ellis* v. *Slingham*, 20 Barb., 302. This is but negative authority ; but, in view of all the considerations bearing on the question, we are disposed to regard this as the rule in cases of such a character.

II. In the respondent's answer, they state that they rejected the returns from the two townships, because they were not made in accordance with the requirements of law ; and, on motion of the relators, they were ruled to make a more specific statement of the causes for such rejection, and the defects existing in the returns. This ruling is assigned as error. But we think the motion well made, and properly sustained. It was necessary for the court to pass upon the question of their right to reject the returns, and for this purpose it was requisite that it should have before it the causes of rejection, in particular, even to the specific nature of the defects.

The first four assignments of error bring us to the body of the case. They relate to the sustaining the motion for the alternative writ, and to the overruling of respondent's motion to quash it. The tenth is to the ordering the peremptory writ.

III. The first objection to the writ is, that it is directed to two distinct and separate bodies, and commands distinct and separate acts. This objection refers to the fact, that the writ requires the board to canvass the returns and declare the result, while it directs the judge alone to enter that result of record. This constitutes no valid exception to the writ. The statute assigns the duties in this manner. Both acts relate to one object or end, and are requisite to its accomplishment. It is no objection to the writ, that some acts, or some part of the duty, is to be done by one of their number, and that it does not pertain to the others, if it is a part of the principal object intended. For a neglect of this, he alone is responsible. If this exception could

The State of Iowa, ex rel. Byers, v. Bailey, County Judge, et al.

prevail, it would go to the extent of requiring one writ to issue to the canvassers to perform their joint duty, and another to the judge to enter up the result. But this is needless. There are many cases in which the writ issues to the mayor, burgesses, and commonalty, or the like, of a town, where some part of the duty to be performed is to be done by the mayor alone. Tap. on Mand., chapter 5.

IV. Notwithstanding the objection that the writ is not under the seal of the court, the transcript furnishes evidence to the contrary, so far as the nature of the case permits, and so far as is usual, in cases brought to this court. The clerk's attestation states that the seal is affixed, and a scroll, with the word "seal" enclosed, stands for the original.

V. The writ is issued upon the information, under oath, of the party beneficially interested. Code, section 2183. Our institutions in America, are such as to have led to the application of this writ to some cases, the like of which do not exist in England; and, accordingly, we do not, in all instances, find precisely similar cases in the English books. The treatise of Tapping on this subject, from that country, seems to imply, or to be written upon the tacit assumption, that in all instances, it is sought for individual benefit, such as to be admitted or restored to an office, and the like. Tap., chap. 5, 308. But, even under this view, the right of application for the writ, is not expressly limited. In America, it has been expressly held, that in a matter of public right, any citizen may be a relator, in an application for a mandamus. *The State, ex. rel. Rice* v. *County Judge of Marshall County*, ante 186, citing *The People* v. *Collins*, 19 Wend., 56; *Pike County* v. *The People*, 11 Ill., 202; *Napier* v. *Poe*, 12 Ga., 170.

Having in view this pre-existing law, and the manifest necessity of the case, in those instances which relate to public rights and interests, the expression, " party beneficially interested," used in our statute, (Code, section 2183), is not to receive a close construction, but is to be applied

liberally, and so as to promote the ends of justice. It was not, probably, intended to restrain the former law, further than to direct that the application should be made by those connected with the matter. In a case of an actually private right, its fitness is apparent. And in an instance of a public interest, it might appropriately restrict the application to those immediately concerned—to that portion of the public directly affected. As the law does not confer the right, nor impose the duty, upon any one—not even an officer—if it were held that a citizen of the county could not make the application, it would seem to follow that no one could, and then a case of great public interest would be without remedy.

But the applicants in the present cause, have a more direct interest than simply that of citizens of the county. In connection with this question, it is objected that they are not averred to be voters, and that they have and show no interest, distinct from that of all the voters of the county. The informants are eighty-three in number, and aver themselves to be voters, and residents of the townships whose returns were rejected. It further appears that the eighty-three petitioners, equal in number, wanting seven only, all the voters who voted in the two townships aforesaid, and they aver that they voted at the election in question, so that it follows that their votes were rejected, and they complain that they are thus deprived of a voice in the location of their county seat. Therefore, without relying upon the broader rule above stated, we think that those thus deprived of their voice in such a question, come within the statute terms above quoted, and are "parties beneficially interested," according to the nature of the case.

VI. Another objection made is, that the writ is directed to a board of canvassers, and that the justices of the peace are not members of such a board. In the case against the judge of Marshall county, before referred to, a similar objection was held not to avail. There, the writ was directed to the judge alone, and he took the exception that the board of canvassers was dissolved. But it was consid-

The State of Iowa, ex rel. Byers, v. Bailey, County Judge, et al.

ered that this body is not of such a nature as is contemplated by the rule referred to. The county judge exists, and he can call into being the other two members, by calling upon either the same, or other parties. In that case, the question whether the writ should be directed to the judge alone, or to him with the two justices, is raised; and among the reasons for holding that it should be to the judge only, was the possible contingency of the death of one, or both the justices. Something very like this has occurred in the case at bar, in the official death of one of the justices. B. E. Depuy answers, that he is not now a justice, and that, therefore, he cannot legally act further as a member of the board of canvassers.

In the case referred to, it was not intended to hold, that the writ could not be addressed to the judge, with the justices, but only that it was properly directed to him alone, and this instance shows the correctness of that opinion. But it does not follow that it would be bad, if to the three canvassers. We are disposed to hold it good in such a case. There is sometimes a choice of persons, or characters, to whom to direct it. Tap. on Mand., chapter 5. Then, if the writ directed to the three, would not be quashed, it will not be so, because one of the justices has become *functus officio*. This becomes the occasion for amending the alternative writ, so as to require the judge to take to his assistance two justices, and canvass the returns. It cannot be directed to one who has ceased to hold the office of justice, when the statute requires one holding it.

VII. Again: The respondents object that the writ shows, and they also answer, that they have already performed the duty required; and further, that the rejection of the returns, or votes, is discretionary with the canvassers, and the court will not control them in that discretion. This same objection, also, is set up in the case before named, and we refer to what is there said, repeating the substance only here. The duty, in such cases, is mainly ministerial, although sometimes, and on some points, it be-

comes judicial, or, at least, discretionary. And it is not within the discretion of the canvassers to receive or reject the returns. If they may be known as returns, it is their duty to receive them and to count the votes. To decide what votes or returns shall be rejected and not counted, belongs solely to that tribunal which is empowered to determine, ultimately, upon a disputed election. This is sometimes a board constituted by law, for the trial of a contested election, or it may be a court of justice, before which the question may be brought in a manner recognized by law.

As to the answer, that the duty has been performed, it is considered as not performed, when it is not done in accordance with law. The duty is to count all that are known as returns. But they have not counted all. They have rejected a part, which they had not the authority to do, and they have declared a result, but not the true one.

VIII. It has been remarked, that the respondents were properly ruled to make a more specific answer as to the cause for which the returns of the two townships of North Washington and Deerfield were rejected. Through the amended answer, the original returns are placed before the court. The respondents say the returns are so imperfect, that they cannot say how many votes were cast upon the question of removing the county seat, nor how many were cast for either place; and that no poll list was returned from North Washington. If the returns are absolutely so uncertain in their form or nature, that they cannot be known as such, or if the statement of the number received by any person or object, is so confused, or indefinite, or uncertain, that it cannot be ascertained with sufficient clearness, then, undoubtedly, the whole returns must be rejected, or the vote on the one subject on which they are so uncertain. But if they may be known as returns, they are not to be rejected, for any question of sufficiency.

Upon inspecting the return from North Washington, there appears no cause for its rejection. The caption states

The State of Iowa, ex rel. Byers   v. Bailey, County Judge, et al.

that at such an election, (defining this fully), "there were thirty-seven ballots cast for the following officers, to-wit: For county surveyor, Charles Fitch received thirty-seven (37)," and then, after naming several other county officers, and the persons voted for, with the number received, (which on all the county officers was thirty-seven), the return says: "For county seat, New Hampton received thirty-seven (37)." There is nothing which renders this paper doubtful as a return, and it is manifest that the whole number of votes was thirty-seven, and that they were all cast in favor of New Hampton.

But the burthen of the case arises on the return from Deerfield. Although less correct and clear than that from North Washington, yet the canvassers received it. It does not show with equal certainty, how many ballots in all were cast, but it states that: "There were fifty-three ballots cast on the proposition to remove the county seat, of which, 'for county seat, New Hampton,' received forty-three votes; 'for county seat, Forest City,' received—" It is sufficiently plain that fifty-three was the total number of ballots cast. It is stated above that the returns show the vote in Deerfield, to have been forty-three for New Hampton, and none for Forest City. But the case turns on the word "forty." The petitioners aver that fifty-three ballots were so cast. They claim that there were, in all, four hundred and thirty-eight votes for New Hampton, and four hundred and thirty-two for Forest City, giving a majority of six votes to the former place. On the other hand, the respondents claim that there were but forty-three votes for New Hampton, in Deerfield; and that the total was four hundred and thirty-two for Forest City, and three hundred and ninety one for New Hampton, making a majority of forty-one votes for the former place. If the thirty-seven votes from North Washington are counted, and ten are added to the count of the Deerfield vote, these numbers would make the four hundred and thirty-eight claimed by the petitioners for New Hampton.

402     SUPREME COURT CASES—1858.

The State of Iowa, ex rel. Byers v. Bailey, County Judge, et al.

In regard to the word "forty"-three in the return from Deerfield, it is claimed that it was altered from fifty to forty. The evidence stands thus : The word has evidently been altered. There has been an erasure of a letter which extended above and below the line. The return shows that fifty-three votes were cast on the county seat question, and none are given to Forest City, whilst but forty three are set down for New Hampton. The record says : "This cause came on to be heard," &c., and neither party requiring a jury, issues of both law and fact were submitted to the court." The bill of exceptions recites that the relators offered in evidence the original returns from the two townships above mentioned, which are annexed to the bill, and which are the same that are before referred to in this opinion, and which appeared to be the only returns made to the canvassers, and upon which they acted. The relators then called J. A. Sawin, as a witness, who testified that he was a clerk of the election, and that the returns had been altered from fifty-three votes to forty-three in favor of New Hampton, since they had been made up by him as clerk of the election, and sealed and directed to the board of canvassers. Objection was made to the introduction of this evidence, upon the ground that it was attempting to contradict by parol, the returns which they had offered in evidence, and because it was irrelevant and improper, and the court could not receive evidence which was not before the canvassers. The objection was overruled and the testimony admitted; to which respondents excepted, and now assign the same as error.

Whatever tribunal, whether it be a court of justice, or a body constituted for the trial of a contested election, stands in a position to try the ultimate question of right, and is not in the place of canvassers merely, is authorized to take testimony. It is not limited to the face of the returns, but hears testimony *aliunde*. This is seen in many of the cases, and we refer to those cited in the case against the judge of Marshall county. And to these it will not be unsuitable to add others, illustrating various points relating to elections,

and the manner of trying them. *Brown* v. *O'Brien*, 2 Carter, 423; *The People* v. *Kildeff*, 15 Ill., 492; 2 Scam, 204; 1 Manning, (Mich.), 362; 1 Doug., 59; Morris, 31; 13 Ala., 805; 1 Hill, 674.

On the other hand, the duty of canvassers is, to receive the returns, to count the votes, and either declare the result, or certify the numbers to another body of canvassers. So far their duty is ministerial, as it is often said to be in in the books, and they have no discretion. But it is not always so. The case, or the point, may arise where they must exercise their judgment or opinion. Therefore their duty is sometimes said to be not altogether ministerial. *Ex parte Strong*, 20 Pick., 444. Such we conceive to be the question on the word "forty"—whether it was forty or fifty. Here they must exercise judgment, opinion, discretion. They had no evidence before them farther than the return, and upon this they decided.

If the district court, or this one, were acting upon the final question which town was chosen—if it could, under this proceeding, pronounce conclusively between them—if it did not have to act upon and through the canvassers, it could properly hear testimony showing the alteration of the word. And, in truth, we cannot say that it was error to receive it, because it was nugatory The court cannot command the canvassers to regard the word as fifty, for it depends upon opinion—upon evidence; upon opinion, whether it is "forty" or "fifty," on the face of the paper; and upon evidence, whether it has been changed. If the court may control the canvassers upon this, then the order for the peremptory writ is not sufficient. They are ordered to count all the votes. But they say they have counted all. They should be directed to count fifty-three in favor of New Hampton from Deerfield. Nothing less than this will reach the point. But this the court cannot do, for it would be controlling their discretion, and perhaps commanding them to act against their convictions.

But though the court may not be able to control the de-

claration of the result by the canvassers, yet the case is not, for that reason, without remedy. If wrong has been done, as has been remarked, the proceeding by mandamus is not usually final, but the party may still have to resort to some other process, which enables the court to act directly on the final question without the intervention of a person or body standing like the canvassers. Sometimes *quo warranto* is suitable, or it may be a second writ of mandamus, or the more common process of injunction. The object would be to adopt such a mode, as will bring before the court, and enable it to act, directly upon the questions of doubtful returns, or questionable votes, and thus the court would be able to hear testimony, and so to correct mistakes or prevent frauds.

This somewhat extended examination of the case, renders it unnecessary to notice directly two or three points of minor consequence, made by the respondents.

In conclusion, there was no error in the decision of the court, that the canvassers ought to receive and count the returns from North Washington; but there was error in undertaking to control their discretion or judgment, on the question whether there were forty-three or fifty-three votes cast in Deerfield, for New Hampton as the county seat.

The order that a peremptory writ of *mandamus* issue is reversed.