## Case No. 5,950.

### HALL et al. v. UNION PAC. R. CO.

[3 Dill. 515; 6 Chi. Leg. News, 307; 8 Am. Law Rev. 775.] [1]

Circuit Court, D. Iowa. 1875. [2]

JURISDICTION OF UNITED STATES CIRCUIT COURT IN MANDAMUS CASES—WHEN PRIVATE PERSON MAY INSTITUTE PROCEEDINGS.

1. The act of March 3, 1873 (17 Stat. 509), gives to the proper circuit court jurisdiction in mandamus to compel the Union Pacific Railroad Company to operate its road as required by law. There must be jurisdiction over the company by service upon it to enable the court to exercise the power conferred by the act.

[Cited in People v. Colorado Cent. R. Co., 42 Fed. 641.]

2. Whether the circuit court for the district of Iowa can acquire jurisdiction over the company under this act, quaere.

3. Private persons who suffer damage and inconvenience from the failure of the company to operate its road as required by law, may institute proceedings under the act of March 3, 1873, supra, without the sanction of the attorney general.

[See note at end of case.]

4. Cases in which the attorney general must, and in which private citizens may, apply for the writ, considered.

A petition or statement under oath, is filed in the court, by Samuel E. Hall and John W. Morse, citizens of the United States, and of the state of Iowa, asking for a writ of mandamus to be directed to the Union Pacific Railroad Company to compel it to operate its trains over the whole of its road as one continuous line, from Council Bluffs westward, and to desist from operating its bridge over the Missouri river between Council Bluffs and Omaha, as an independent and separate line or portion of its road. The nature of the statements made by the prosecutors, and of their interests, and of the particular duty which it is sought hereby to compel the respondent to perform, appear more at large in U. S. v. Union Pac. R. Co. [Case No. 16,-599]. The decision then made settled the mode of procedure herein to be in accordance with the practice at common law, and the

counsel for the prosecutors or relators now move for an alternative writ of mandamus to be directed to the Union Pacific Railroad Company, commanding it to operate the whole of its line of road to and from Council Bluffs, etc., as above stated. A notice of the application was served upon a general agent of the company at Council Bluffs. No appearance is made by the company, but counsel in its interest have been heard to make suggestions against the granting of the alternative writ.

John N. Rogers, Sapp, Lyman & Hanna, and A. V. Larimer, for prosecutors.

James M. Woolworth and A. J. Poppleton, contra.

DILLON, Circuit Judge. On March 3d, 1873, it was enacted by congress that the "proper circuit court of the United States shall have jurisdiction to hear and determine all cases of mandamus to compel the Union Pacific Railroad Company to operate its road as required by law." 17 Stat. 509. This act is the basis of the present proceeding, and the proper practice under it has been already determined. U. S. v. Union Pac. R. Co. [supra]. The question before us at this time is whether an alternative writ shall be ordered.

The relator's counsel have been heard in support of the motion for the writ; and in a matter of so much importance we willingly granted the application of counsel to be heard in opposition, although they do not enter an appearance for the respondent. Two leading objections have been urged against awarding the writ. The one relates to the jurisdiction of the court over the company; the other to the form of the proceeding.

Whether the circuit court for the district of Iowa is the "proper circuit court" to hear and determine the case made by the relators, need not, and perhaps can not, now be determined. If the writ be awarded, but can not be served on the respondent so as to give the court jurisdiction over it, then, unless there is a voluntary appearance, the proceeding will necessarily fail. The petition or information sets out that the eastern terminus of the respondent's road is in this state; and we are not prepared now to say as a matter of law arising from statutes of which we take judicial notice, that it appears that in no event can this court obtain jurisdiction under the act of 1873, over the company, to compel it to operate its road as required by law. If it was admitted or appeared that no part of the road was in the district, and that the company had no principal place of business therein, we might have the data, perhaps, to decide whether in any event this court could acquire jurisdiction over it. Under the circumstances, we reserve the question as to jurisdiction until we see whether the company appears, or until the character of the service of the writ upon it, is known to us.

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission. 8 Am. Law Rev. 775, contains only a partial report.]
[2] [Affirmed in 91 U. S. 343.]

Whether the facts stated by the relators show a failure by the company to operate the road according to law, is a question which may arise on demurrer to the alternative writ, or on the return thereto, in case the court shall acquire jurisdiction over the respondent, but which we do not consider at this stage of the proceeding.

This brings us to the objections which relate to the form of the proceeding. It is contended that the affidavits should be filed, or the writ moved for, by the public law officer of the United States,—either the attorney general or the district attorney. In other words, as the duty here sought to be enforced is one which the company owes to the public at large, and one in which the relators have no special interest distinct from other citizens, it is maintained that the law officers of the United States have the sole right to apply to the courts to enforce its performance; and that private persons can only have or move for the writ of mandamus when it is the appropriate remedy to enforce some individual or private right.

The affidavit or petition on which the writ is asked states that the failure of the company to operate its road according to law "causes great expense and delay to shippers and passengers, and great damage and inconvenience to the public at large, and especially to the petitioners, who are merchants doing business in Council Bluffs, and who are constantly obliged to ship and receive goods transported over said road." This is the only special interest set forth by the prosecutors; and it was conceded by their learned counsel that the duty here sought to be enforced was a public duty, or at least one in the performance of which the relators had no more interest than any citizen who had frequent occasion to ship and receive goods over the respondent's road.

There is no legislation of congress specifically making it either the duty of the attorney general or the district attorney to institute proceedings like the present; and so the question whether they must be instituted by one of these officers, or may be instituted by private persons, and the writ moved for by private counsel, must be determined on general principles having reference in their application to the particular nature of the defendant corporation, and the particular duty which it is here sought to make it discharge.

The act of March 3, 1873, gives to the proper circuit court jurisdiction in mandamus to compel the road to be operated according to law, but the act is silent as to who shall institute or set on foot the proceeding. This is more significant because as respects other duties and supposed liabilities of the company, the attorney general is expressly directed to institute the necessary legal proceedings to protect the interests of the United States. Act March 3, 1873 (17 Stat. 509); Act April 10, 1869 (16 Stat. 56).

There is, therefore, as respects the duty of operating its road as one continuous line (which is the particular duty the performance of which is here sought to be compelled), no declaration of the will of congress as to who shall or may commence the necessary proceeding in mandamus.

It will conduce to a proper solution of the question before us to advert briefly to the character of the Union Pacific Railroad Company. It was chartered by congress and aided by money and lands. It is a private corporation in the sense that its capital stock is owned by the stockholders, who are declared to constitute the corporate body. Both from the title of the incorporating statute and from express declaration in the body of act (section 18), it appears that the object of congress in chartering and aiding the company, was to promote the public interest and welfare, and secure to the government the use of the road for postal, military and other purposes. The government has also a lien on the railroad and its property, to secure the bonds it issued to the company. By the act of July 2, 1864 (13 Stat. 356, § 15), "the several companies are required to operate and use said roads and telegraph for all purposes of communication, travel and transportation, so far as the public and government are concerned, as one continuous line."

Throughout the legislation of congress respecting this company, the fact is recognized that it sustains a special or peculiar relation to the United States in their political capacity and also a relation to the people at large or the general public. Now so far as the company owes duties to the general government of a nature to be enforced by mandamus, it is clear that private persons cannot institute or set on foot the proceedings. This would be a duty devolved upon the attorney general by express enactment, or resulting from his station. Such is not this case. And it may be admitted that where, as in the present instance, the duty charged to be neglected by the company is one which concerns the public at large as distinguished from the government, that the attorney general in his official capacity, alone, or on the relation of private persons, might file the necessary suggestion or affidavits and move for the writ.

But where the duty said to be neglected is one which the company owes to the public, and where individuals who suffer from such neglect complain of it, must the court refuse the writ solely because the attorney general does not move for it? Upon principle and authority this question must, in our opinion, be answered in the negative. By the practice at common law "the writ is ordinarily obtained on the motion of counsel to the court of king's bench, at Westminster, during the term, supported by a suggestion, on the oath of the party injured (prosecutor) of his right, and of the denial of justice by the defendant, whereupon a rule nisi is made," etc. Tapp. Mand. 5. "The application to the court of B. R. for a rule for a

writ of mandamus in all matters affecting the public is ex debito justitiae. * * * Where, however, the right or power is of a private nature, as in the case of many officers, etc., in which the public are not primarily concerned, it is discretionary in the court, in the first instance, either to grant or refuse the application. * * * In general all those who are legally capable of bringing an action are also equally capable of applying to the court of B. R. for the writ of mandamus," etc. Id. 287, 288.

It is clear that the affidavits upon which the writ is applied for may be made by any person cognizant of the facts, and those affidavits should not be entitled as of the cause, for none is yet pending, and the government only becomes a party in form when the writ issues. Tapp. Mand. 413; Haight v. Turner, 2 Johns. 371; People v. Tioga Common Pleas, 1 Wend. 291.

So that the question is reduced to this: Must the writ be applied for by the attorney general? And must it be refused in a case otherwise proper for it, unless this officer makes or sanctions the application? A thorough examination of the English books has satisfied us that it is the constant practice of the queen's bench to entertain applications by private persons, on the motion of private counsel, for writs of mandamus to public officers and companies to enforce the performance of public duties. This is well illustrated by the case of Rex v. Severn & W. Ry. Co., 2 Barn. & Ald. 646, which, in principle, is analogous to the case at the bar. In the case just cited, upon the affidavit of a private prosecutor (Taunton), and on the motion of private counsel, without the presence or sanction of the attorney general, the king's bench granted a mandamus to compel the railway company to reinstate and lay down again the track which it had taken up; and the writ thus applied for was ordered on the distinct ground that the public, of which the prosecutor was one, and interested probably in the mines which the railway accommodated, had a right to the use of the road. See, also, Rex v. Commissioners of Dean Inclosure, 2 Maule & S. 80; Rex v. Bristol Dock Co., 6 Barn. & C. 181; Clarke v. Leicestershire & N. Union Canal, 6 Adol. & E. (N. S.) 898; Reg. v. Fall, 1 Adol. & E. (N. S.) 636; Reg. v. Trustees, etc., of Turnpike Road, 12 Adol. & E. (N. S.) 448; Reg. v. Archbishop of Canterbury, 11 Adol. & E. (N. S.) 578. And on principle, where a statute enjoins a duty for the benefit of the entire public, why may not any one of the public injured by its non-performance complain of it to the proper court, and ask it to compel the observance of the duty? Why should such a person be forced to resort to the attorney general, and what is the necessity or propriety for vesting in this officer, whose general duties by reason of the peculiar structure of our government, are quite dissimilar to those of the officer of the same name in England, the sole power to

determine whether a judicial inquiry shall be made concerning the discharge by a corporation of duties imposed upon it by law for the public advantage? What answer is it to the present relators to say, "Yes, you are injured by the company's neglect to discharge its duty, but as your injury is the same as that suffered by others, the court cannot hear or redress your complaint." But it may be objected to this view that if one person may apply and have the writ, so equally all may apply, and the result is that the defendant may be vexed with many applications, whereas if the attorney general or some public officer can alone apply, one suit only of the same character will be brought, and the result will be conclusive, both as respects the public and the defendant. An answer to the objection is that the granting of a writ of mandamus is discretionary with the court, and if a case is pending which will test the right or question in controversy, the court may for this reason alone refuse to entertain similar applications by other persons.

Besides, it deserves consideration whether a judgment in a suit in which the attorney general appears, concludes the public, to any greater extent than a similar judgment would in a mandamus proceeding instituted by a private relator, as in each case it is the writ which makes the government formally a party, and the form of the proceeding is the same.

There is some contrariety of opinion in this country whether private persons may be prosecutors or relators in a mandamus proceeding to enforce a public duty, but the decided weight of authority is in favor of the doctrine. The leading case asserting it is People v. Collins (1837) 19 Wend. 56, where the court, after an examination of the English decisions and practice, reaches the conclusion that in a matter of public right, any citizen of the state may, where mandamus is the proper remedy, be a relator to enforce the execution of the common law or an act of the legislature, though it was admitted to be otherwise in cases of private or corporate rights, where the title or right of the relator to relief must appear. To the same effect see, also, Hamilton v. State, 3 Ind. 452; City of Ottawa v. People, 48 Ill. 233; State v. County Judge of Marshall, 7 Iowa, 186, 202; State v. Bailey, 7 Iowa, 390, 397; People v. Halsey, 37 N. Y. 344, 53 Barb. 547; State v. Common Council of Rahway, 33 N. J. Law, 110; Watts v. Carroll Parish, 11 La. Ann. 141; Dill. Mun. Corp. § 695, and cases cited; State v. Zanesville & M. Turnpike Co., 16 Ohio St. 308. Contra, People v. University Regents, 4 Mich. 98; Sanger v. County Commissioners of Kennebec, 25 Me. 291; Heffner v. Com., 28 Pa. St. 108. Compare Com. v. Meeser, 44 Pa. St. 341.

The right to institute mandamus proceedings by private prosecutors is likened by Judge Cowen to the right of private persons to become relators in informations in the

nature of quo warranto. People v. Collins, supra. In substance there is often much resemblance, but in England, an information proper, that is, the suggestion upon which the court acts, is filed by the attorney general as the appropriate officer of the crown, and unlike the affidavits in mandamus, the information cannot be made by private persons, though it may be and often is made upon their relation. While it is usual to join relators, it is not necessary. The object of joining them is that the defendant may not be oppressed, without remedy, by vexatious suits, since the relators are liable to costs, while the crown is not. Per Lord Redesdale, in Attorney General v. Mayor, etc., of Dublin, 1 Bligh (N. S.) 312.

Reserving, as we do, all questions which concern the merits of the controversy, and in order, indeed, that the merits may be better understood, we think our discretion will be more wisely exercised by awarding than by refusing the alternative writ, particularly as in this way the opinion of the supreme court may more certainly be obtained than if the writ were denied. Alternative writ ordered.

See Union Pac. R. Co. v. Hall [91 U. S. 343.]

[NOTE. The railroad company, defendant, put in the return to the alternative mandamus, which was met by an answer filed by the relators, and the cause was then heard on the facts stated in the writ, the return, and the answer, the affirmance of the answer not being controverted; and a peremptory mandamus was ordered. Case unreported. On writ of error this judgment was affirmed by the supreme court, Mr. Justice Strong delivering the opinion. Upon the merits of the controversy it was held that the defendant railroad company is required by law to use its bridge between the cities of Council Bluffs and Omaha as part of its entire road, and as a continuous line connecting with the Iowa roads. In respect to the right of plaintiffs in this action, the learned justice remarked that there is a decided preponderance of American authority in favor of the doctrine that private persons may move for a mandamus to enforce the public duty to the government as such without the intervention of the government law officer. Numerous cases were cited, and the objection that the writ is prerogative in its nature was explained as having no force in this country, and, as the granting of the writ is discretionary with the court, it cannot be objected that it exposes a defendant to be harassed with many suits. In referring to the act of 1873, it was noted that it does not prescribe who shall move for the writ, while the attorney general is directed to institute the necessary proceedings to secure performance of the other duties of the company; thus raising a reasonable implication that congress did not contemplate the intervention of the attorney general in all cases. Mr. Justice Bradley dissented, upon the ground that the Missouri river, the western boundary of Iowa, is, by a fair construction of the charter of the Union Pacific Railroad Company, its eastern terminus, and, as the mandamus requires the company to use the bridge as part of its continuous line, it should not have been granted. 91 U. S. 343.]