PEOPLE *ex rel.* VAN DYKE *v.* COLORADO CENT. R. Co. *et al.*

*(Circuit Court, D. Colorado. June 27, 1890.)*

1. FEDERAL COURT—JURISDICTION—REMOVED CASE—MANDAMUS.
   Where a petition for *mandamus* of which a state court has jurisdiction is removed to the federal court, the latter court will have jurisdiction of the suit, though it would be beyond its jurisdiction if originally brought therein.

2. SAME—TERRITORIAL LIMITS.
   In the absence of express authority by act of congress, a federal court has no jurisdiction to compel the operation of a railroad outside of the state in which the court sits.

3. MANDAMUS—PLEADING.
   Where a private person petitions for a *mandamus* "on behalf of the people of the state," he must show in his petition and in the alternative writ that he is a citizen of the state, and that his interests as such citizen are injuriously affected by the acts complained of.

4. RAILROAD COMPANIES—REGULATION—MANDAMUS—PLEADING.
   An allegation in the alternative writ that the defendant ran and operated a certain line of railroad, and that said defendant was a corporation of the state in which the suit is brought, without showing when or for what purpose it was chartered, or what railroad, if any, it built, or was authorized to build, is not sufficient to show that the defendant was under any legal obligation to operate said railroad.

5. SAME—ILLEGAL LEASE.
   The lessee of a railroad under a lease which all parties admit to be illegal, cannot be compelled by *mandamus* to operate such road.

At Law. On petition for *mandamus*.

On the 28th day of August, 1889, there was filed in the district court of Larimer county, in this state, a petition, the material parts of which are as follows:

"Your petitioner, Isaac N. Van Dyke, on behalf of the people of the state of Colorado, respectfully represents unto your honor that he is informed and believes that heretofore, to-wit, on the 12th day of May, A. D. 1884, the Colorado Central Railroad Company was a corporation of the state aforesaid; that said railroad extended through and from the city of Fort Collins to the northern line of said state, and from said northern line of said state through and to the city of Cheyenne, in the territory of Wyoming, and was then being run and operated under one management from said city of Fort Collins to said city of Cheyenne, aforesaid, and was by its being run and operated of great financial yearly value to the plaintiff, the people of said state, which was then, and has been hitherto, and is now, well known to the defendants hereto."

The petition then alleges that the company mortgaged its road to the defendants Jay Gould and Frederick L. Ames; states that, about the 20th of February, 1879, the Colorado Central Company leased its railroad to the defendant the Union Pacific Railroad Company for the term of 50 years, and sets out the terms of the lease, and avers "that the leasing of the said Colorado Central Railroad to the Union Pacific Railroad Company was done at the instance of Jay Gould and Frederick L. Ames; that

when accomplished it was the selling and leasing of a competing line, and done in violation of the statute laws of the state of Colorado." It is averred that for a period of "five years last past" the defendants have failed and refused to equip, operate, and run that part of the Colorado Central Railroad extending from Fort Collins to the northern line of the state of Colorado, and from thence to the city of Cheyenne, in the territory of Wyoming, and that, by reason of the failure to operate said line of road, "the people are compelled, when they wish to travel to Cheyenne, to go upon and use another line of railroad operated by the Union Pacific Railroad, making the distance much longer, with loss of time, change of trains, and other inconveniences too numerous to enumerate." It is alleged the people have been damaged by the neglect and refusal to operate the line of road mentioned in the sum of $500,000, for which a judgment is asked; and the petition concludes with a prayer that the defendant may, by writ of *mandamus*, be required and compelled to put said line of road in repair and operation, and to operate the same.

On the petition of the defendant the Union Pacific Railroad Company, a corporation of the United States, the cause was removed into this court on the authority of *Pacific Railroad Removal Cases*, 115 U. S. 1, 5 Sup. Ct. Rep. 1113. An alternative writ of *mandamus*, substantially in the terms of the petition, issued out of this court. The respondents filed a general demurrer and answer to the alternative writ.

Among other defenses, the following are set up in the answer:

"That the relator in this case has no right or authority whatever to make or file the petition herein, or to maintain this action. That this action purports to relate to a line of railroad from Fort Collins, in the state of Colorado, to Cheyenne, in the territory of Wyoming, and that this court has no jurisdiction over the subject-matter stated in the petition and writ herein. Admit that there may at one time have been a lease made by the Colorado Central Railroad Company to the Union Pacific Railroad Company, but deny that it is as stated in said petition and writ; and allege that, if there ever was any such lease, that the same was never in effect or operative on said companies; and further allege that the said the Colorado Central Railroad Company had no right or authority to lease, and the said the Union Pacific Railroad Company had no right to take a lease of, said premises, and that, as a matter of fact, it never did take the same; and that such lease, if any there is or was, is not now, and never has been, in force or effect. That defendants are not, neither is either of them, under any obligation whatever to construct, maintain, or operate said railroad under their charter or charters or otherwise. That there is no necessity whatever for the repairing, maintaining, and operating of said railroad described in said petition and writ. That the people of Fort Collins and vicinity have direct and adequate railway connections with said Cheyenne by railroad constructed, operated, and maintained between Fort Collins and said Cheyenne by way of Greeley, and thence directly to Cheyenne, and that they have not been damaged in any way or manner whatsoever. That said railroad between said Fort Collins and Cheyenne runs through a very thinly settled country, and there are very few settlers along the line of said railroad, and very little local travel, and that the same could not, when operated, and could not now, if repaired, maintained, and operated, be made to pay the running expenses thereof; and this is especially true from the fact that all of the business is now done without any inconvenience whatever over and by way of the line of railroad above described."

Testimony has been taken from which it appears that the line of road from Fort Collins to Cheyenne was operated until the year 1882, when trains were discontinued, and have not since been run; that the country between Fort Collins and Cheyenne is sparsely settled, and that the road between these points could not be made to pay running expenses; that the citizens of Fort Collins and vicinity can reach Cheyenne by rail via the Greeley, Salt Lake & Pacific and Denver Pacific Railroads,—the distance by these roads from Fort Collins to Cheyenne being 79 miles, and by the line of the Colorado Central, as formerly run, 48.1 miles. The general direction of the Denver Pacific and the Colorado Central between Fort Collins and Cheyenne is the same, but to reach the Denver Pacific from Fort Collins passengers have to pass over the Greeley, Salt Lake & Pacific Railroad, a distance of 24 miles, in a south-easterly direction, to Greeley.

*Isaac N. Van Dyke*, for the relator.

*Teller & Orahood*, for respondents.

CALDWELL, J., (*after stating the facts as above.*) The writ of *mandamus* is no longer a prerogative writ, but it is now regarded as in the nature of an action by the relator against the respondent for the enforcement of a legal right or duty which cannot be fully or adequately enforced in any other mode. It is used only to compel action and enforce the performance of a pre-existing duty. One who invokes its powers must show a clear legal right to have the act performed, and performed in the manner prayed for, and by the person or corporation sought to be coerced. Every fact essential to the exercise of the jurisdiction must be distinctly stated, and the relator's right to the relief he seeks must be clearly made to appear by the averments of the petition and alternative writ. It must be made to appear that the writ will be effectual as a remedy, and that the court granting it has the jurisdiction to enforce compliance with its commands. Whether a writ of *mandamus* shall be issued is in every case a matter resting largely in the discretion of the court, and depends upon all the surrounding facts and circumstances. Mor. Priv. Corp. § 1134.

These well-settled principles must be applied in the decision of the case at bar. The circuit court of the United States can exercise no original jurisdiction by *mandamus*, except when the jurisdiction is specially conferred by an act of congress, as was done by the act of March 3, 1873, (17 St. 509.) *U. S. v. Railroad Co.*, 2 Dill. 527, 3 Dill. 515, and 91 U. S. 343. In those courts the writ is granted only in aid of an existing jurisdiction, but this cause was removed from a state court into this court; and it has been decided by Mr. Justice MILLER on the circuit that a petition for a *mandamus* in a state court is "a suit of a civil nature at law," within the meaning of the act of congress of March 3, 1873, and that it "is a suit within the language and purpose and policy of the removal act." *Washington Imp. Co.* v. *Kansas Pac. R. Co.*, 5 Dill. 489. If it is "a suit" which can be removed into this court, then this court must have jurisdiction to try it. The object of removing a case from the state to the federal court is to try it in the latter court. Any cause

that cannot be tried in the federal court after it is removed into that court for want of jurisdiction is not a removable case. The cause being one that is removable under the removal acts, this court has jurisdiction to try and determine it, although its nature is such that it could not have been brought originally in this court.

It is the settled law in this court that a private person, whose rights are affected in common with those of the public, may, without the intervention of the attorney general, move for a *mandamus* to compel a railroad company to operate its road as required by law. *Railroad Co.* v. *Hall*, 91 U. S. 343, 3 Dill. 515. But when a private person moves for a *mandamus*, "on behalf of the people of the state," he must show that he is one of them, and that his interests as a citizen of the state are injuriously affected by the wrong complained of. In the petition, and the alternative writ in this case, the relator's name alone is given. It is not stated that he is a citizen or inhabitant of the United States or of this state, or that he, personally, has been injured by the alleged wrong, or that he has any interest whatever in the controversy he has set on foot.

And the petition and alternative writ are equally defective in describing the defendant the Colorado Central Railroad Company and its legal obligations to the public. These defects are not helped by anything in the respondent's answer. The only allegation in the petition concerning the Colorado Central Railroad Company, upon which alone, if upon any one, rests the obligation to operate the line of road in question, is the following:

"On the 12th day of May, 1884, the Colorado Central Railroad Company was a corporation of the state aforesaid; that said railroad extended through and from the city of Fort Collins to the northern line of said state, and from said northern line of the state to and through the city of Cheyenne, in the territory of Wyoming, and was being run and operated under one management."

And the allegation in the alternative writ is briefer still, being "that on the 10th day of August, 1884, the Colorado Central Railroad Company ran and operated a line of railroad from Fort Collins, in the state of Colorado, to Cheyenne, in the territory of Wyoming."

When the company was chartered, for what purpose it was chartered, where it was authorized to build a railroad or railroads, and what railroad or railroads, if any, it did build, is not stated, and nowhere appears in this record. It is stated "that on the 12th day of May, 1884, the Colorado Central Railroad Company was a corporation of the state aforesaid;" but it is nowhere averred that that corporation ever built a foot of railroad. It is not stated, and in this proceeding cannot be implied from what is stated, that the road from Fort Collins to Cheyenne was built by the defendant, or that it was built by any company under a charter granted by this state. It is obvious that a part of it was not so built, for this state could not grant a charter to a company that would authorize it to exercise in Wyoming the powers indispensable to building a railroad in that territory, particularly the right of eminent domain. Not the slightest reference is made to any charter or other obligation or

contract that imposed on the Colorado Central Railroad Company any obligation either to build or to operate this or any other railroad in this state. During the argument, the court asked for the charter of the Colorado Central Railroad Company, and counsel for the defendant handed the court a pamphlet which it was said contained it; but, upon an inspection of that document, the court is unable, unaided by testimony not in the record, to say that this road was built under the charter. Indeed, the name given to the corporation in that charter is not the name by which the defendant is sued. The references in the petition and alternative writ to mortgages executed by the Colorado Central Railroad Company, and the claim for $500,000 damages, and the proofs on that subject, are all irrelevant in this proceeding, and do not require further consideration.

The Union Pacific Railroad Company is made a defendant as a lessee of the road, and it is alleged that it is bound by the covenants of the lease to operate the road. But the petition of the relator avers that this "leasing, * * * when accomplished, was the selling or leasing of a competing line, and done in violation of the statute laws of the state of Colorado." The defendants strike hands with the relator on this point, and aver in their answer that, if there ever was any such lease, that the same was never in effect or operative on said companies; that the Colorado Central Railroad Company had no right or authority to lease, and the Union Pacific Railroad Company had no right to take a lease of, said premises; and that, as a matter of fact, it never did take the same, and that such lease, if any there is or was, is not now, and never has been, in force or effect." As the relator and respondents are agreed that the lease was void, that ends the case as to the Union Pacific Railroad Company; for if the lease is void it imposes no obligation on the Union Pacific Railroad Company to operate the road. Where both parties to a suit agree that a given instrument is void, the court will not, on its own motion, uphold and enforce that instrument in that case. It is well settled that the railroad company cannot lease its road in the absence of express authority. Whether such authority existed in this case the court does not inquire or decide, because the parties in their pleadings have advised the court that it did not.

As a general rule, a railroad company accepting a charter from the state, under and in pursuance of which it builds its road, may be compelled to operate it after it is built, and will be compelled to do so if it has received state aid, or if its charter in terms imposes this obligation. *State* v. *Railroad Co.*, 29 Conn. 538; *State* v. *Railroad Co.*, 7 Neb. 357; Mor. Priv. Corp. §§ 1115, 1116.

In Morawetz on Corporations (section 1119) it is said:

"The duty of a railroad company to operate its road requires it merely to meet the public wants and exigencies. If there is not sufficient traffic over a particular line of road to pay for the expense of running trains, this is sufficient evidence that the public do not require it to be kept in operation, and in such case the company may cease operating the road, unless this be contrary to the express terms of its charter."

Such is the rule in Massachusetts.   *Com.* v. *Railroad Co.*, 12 Gray, 180.   In the case last cited the court says:

"Again, it is to be considered that the respondent corporation has under its charter other roads to maintain and other duties to the public to discharge, and the running of passenger trains on these branches might exhaust its resources, and render it incapable of discharging these other duties.   It would seem to be therefore not only its right, but its duty, to exercise a sound discretion in the use of its capital, lest, by exhausting it upon trains that were not required by the public wants, it should deprive itself of the means of running at reasonable rates those that were.   The point is made in the argument for the commonwealth that, because the respondents have for a time maintained the roads in running regular trains for freight and passengers, they are bound to continue to run until authorized by the legislature to stop.   We cannot see that a beginning to run these trains rendered their continuance, at whatever cost or sacrifice, a legal duty."

But whether the cases that hold that a railroad company which has not received state aid, and which is not bound by the express terms of its charter to operate its road, may cease to operate it, if it cannot, by prudent management, be made to pay running expenses, and whether that doctrine is applicable to this case, we are not called upon to decide, and do not decide; because, giving to the relator's petition and the alternative writ the most liberal construction, they do not show that the Colorado Central Railroad Company is under any obligation to operate this road, in any state of case or upon any conditions whatever.   In a word, the alternative writ is so barren of the qualities essential to a good writ, is such an imperfect skeleton, that the court, by the most liberal intendment, cannot award a peremptory writ upon it.   It leaves everything to conjecture, and that is too uncertain to found a judgment upon.

In Morawetz on Private Corporations (section 1134) it is said:

"It may be doubted, therefore, whether it be a rule applicable in all cases, that the courts will compel a railroad company to operate its line of road, even though the duty of the company be clear.   The difficulty of supervising unwilling agents in the performance of a continuing duty, of so complicated a nature as that of properly managing a railroad, involving the exercise of a large amount of discretion and technical skill, would in many cases prove a serious obstacle in the way of such an attempt.   Whether a writ of *mandamus* shall be issued is in every case a matter resting largely in the discretion of the court, and depends upon all the surrounding facts and circumstances."

And the court, in the exercise of this discretion, will never attempt to compel the specific performance of an obligation when it is apparent that the attempt would prove unavailing.   Id.   The specific object of the relator set out in the petition, and the mandatory clause of the alternative writ, is to compel the defendant to operate a railroad from Fort Collins, Colo., to Cheyenne, Wyo.   This is the *gravamen* of the relator's case.   Communication with Cheyenne is what is wanted.   The operation of the road to the state line would not accomplish what the relator seeks, and is not what is asked for.

It is highly improbable that this state ever granted to defendant a charter by virtue of which it built or could have built a railroad beyond the limits of the state; and it is quite certain no court sitting in this state

can, by *mandamus*, compel the construction or operation of a railroad in any other state or territory of the Union. Nor can a United States court exercise such a jurisdiction, except it be specially conferred by act of congress in respect of a federal corporation, as was done by the act of March 3, 1873. This objection alone is fatal to the relator's case in its present form. The rule on this subject is that the mandatory clause of the alternative writ should state the averments of title or right which form the inducement of the writ, and should be in conformity with the legal obligation of the respondent. If it exceeds the limits of such legal obligation, it is void. High, Extr. Rem. § 539.

Assuming everything that is stated in the alternative writ to be true, the court could not award the peremptory writ. It is not a case of merely defective pleading which can be cured by amendment. If it were so, we would direct the proper amendments to be made, although leave to amend has not been asked. The defects relate, many of them, to matters of substance, and include nearly or quite every averment essential to maintain the action; and to make amendments that would show a *prima facie* case would be to make an entirely new case. The peremptory writ is denied, and the alternative writ quashed, and the case dismissed, at the costs of the relator, without prejudice to his right to bring another action, as he may be advised.